TOWN OF FALMOUTH *vs.* CIVIL SERVICE COMMISSION
& another.[1]

Suffolk. October 4, 2006. - December 7, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Administrative Law,* Proceedings before agency, Agency's interpretation of
regulation. *Civil Service,* Decision of Civil Service Commission, Police.
*Municipal Corporations,* Police. *Police,* Suspension. *Police Officer. Statute,*
Construction.

General Laws c. 31, § 2 (*g*), authorized the Civil Service Commission (com-
mission) to adopt and apply the so-called "postmark rule" to initial filings
that commence appeals pursuant to G. L. c. 31, § 43, and therefore, a
police officer timely appealed his suspension by mailing his notice of ap-
peal to the commission within the ten-day period established by G. L.
c. 31, § 43, for filing such appeals, even though the commission did not
mark the notice of appeal as having been received until after the ten-day
period had passed. [817-823]
The Civil Service Commission (commission) was not justified, after conduct-
ing a de novo hearing, in reducing a police officer's suspension from 180
days to sixty days, where there was reasonable justification for the action
taken by the officer's appointing authority in the circumstances found by
the commission to have existed when the appointing authority made its
decision. [823-827]

CIVIL ACTION commenced in the Superior Court Department on
July 19, 2001.

The case was heard by *Patrick F. Brady,* J., on motions for
judgment on the pleadings.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*David Hadas,* Assistant Attorney General, for Civil Service
Commission.

*Sheila E. McCravy* for Mark Deutschmann.

*Tim D. Norris* for the plaintiff.

SPINA, J. Based on an incident between the defendant police

[1]Mark Deutschmann.

Officer Mark Deutschmann and a sixteen year old Falmouth resident, the town of Falmouth suspended Deutschmann for 180 days. After a de novo hearing, the Civil Service Commission (commission) reduced Deutschmann's suspension to sixty days. The town, as appointing authority, appealed from the commission's reduction of the suspension to the Superior Court, where the decision of the commission was affirmed. The Appeals Court reversed the judgment and ordered that the decision of the commission be vacated because it found that Deutschmann's appeal was not timely. *Falmouth* v. *Civil Serv. Comm'n,* 64 Mass. App. Ct. 606 (2005). We granted Deutschmann's application for further appellate review.

On appeal, the defendants argue that G. L. c. 31, § 2 (*g*), authorizes the commission to adopt and apply the so-called "postmark rule" to initial filings that commence appeals pursuant to G. L. c. 31, § 43. We agree that the commission properly interpreted the statute in enacting the postmark rule, but we conclude that the commission was not justified in reducing Deutschmann's suspension to sixty days from the town's initial 180-day finding.

1. *Background.* This dispute arose from an encounter that occurred on July 30, 1998, between Officer Mark Deutschmann and sixteen year old Robert Brenowitz. On that date, Deutschmann's wife telephoned the police station to report to her husband, Officer Deutschmann, that their children and the children's playmates were being bothered by three juveniles walking past their yard. Deutschmann, responding to that call, went home to speak with his wife. He then located the three youths and confronted them, singling out Brenowitz on the basis of his wife's description. Brenowitz was detained by Deutschmann and transported a short distance for the purposes of isolating him from his friends before being questioned and released. The discrepancies in testimony before the commission centered around the level of force used by Deutschmann. According to Brenowitz, the defendant grabbed his neck, threw him up against the cruiser, and threatened his life several times. Testifying for the first time at the commission hearing, Deutschmann's version of the event stands in direct conflict with

these claims.[2] He testified that he only pushed Brenowitz in the chest to prevent him from leaving the scene, that he did not throw him against the side of the cruiser, and that he responded to Brenowitz's baiting to hit him: "I'm so mad right now, but if I was to hit you, I'd probably kill you."

Robert Brenowitz filed a complaint against Deutschmann, prompting the Falmouth police department to open an investigation. The investigation found enough evidence to warrant a hearing by the town administrator pursuant to G. L. c. 31, § 41. This hearing resulted in the defendant's suspension for 180 days, based on the administrator's finding of violations of police department regulations concerning use of force, arrest, and transportation procedures and the determination that his behavior constituted conduct unbecoming an officer. The decision was hand delivered to Deutschmann on December 7, 1998. *Falmouth* v. *Civil Serv. Comm'n, supra* at 607.

By letter dated December 17, 1998, Deutschmann appealed from the town's decision to the commission by mail. Although the envelope in which the letter was mailed is not in the record, the letter was stamped as being received by the commission six days later, on December 23, 1998.[3] After denying a motion to dismiss for want of jurisdiction by the town, the commission

---

[2]The record shows that, on being ordered to submit a report concerning the events of July 30, 1998, Deutschmann chose to invoke his "constitutional protections under the US [*sic*] Constitution's 5th Amendment and the Massachusetts Declaration of Rights Article 12." Thus, the town administrator did not have the benefit of Deutschmann's version of events at the time of decision.

[3]We are troubled by the absence in the record of any evidence concerning the actual postmark of the December 17, 1998, letter. Although the Appeals Court was under the impression that the town conceded the issue of the letter's postmark, see *Falmouth* v. *Civil Serv. Comm'n,* 64 Mass. App. Ct. 606, 608 n.4 (2005), a review of the argument below reveals that the town challenged the existence of a valid postmark in both its initial brief and its reply brief to that court. Nevertheless, a reasonable inference can be drawn that the letter was postmarked on or before December 21, 1998. The face of the letter bears the date December 17, 1998, and indicates that it was sent from the office of the defendant's attorney in Needham. Contrary to the finding of the commission in its denial of the town's motion to dismiss, the date stamp on the letter indicates that it was received in the Boston office of the commission on December 23, 1998, not December 22. If the letter was postmarked on December 22, which is the only feasible postmark that would render the appeal untimely, four full days, including an entire weekend, would have elapsed

held a de novo hearing and made its ruling that the suspension should be reduced to sixty days.

2. *Postmark rule.* General Laws c. 31, § 43, allows for a hearing before the commission "[i]f a person aggrieved by a decision of an appointing authority made pursuant to [§ 41] shall, within ten days after receiving written notice of such decision, appeal in writing to the commission . . . ." There is no disagreement that Deutschmann's statutory ten-day period to appeal from the town's decision, excluding weekends as required under the statute, expired on December 21, 1998. Rather, the dispute here is whether Deutschmann's notice of appeal, dated December 17, 1998, but not received by the commission until December 23, satisfies the statutory deadline.

The commission argues that Deutschmann's appeal was timely on the basis of its rules of practice and procedure then in place.[4] Rule 2.4 (a)(3) states: "Papers placed in the U.S. mail shall be deemed filed on the date so postmarked." The commis-

---

between the date on the face of the letter and the date of mailing. A December 22 postmark also would mean that the letter was received and stamped by the commission on the day following the day it was mailed. Both the General Court and executive agencies have employed presumptions that mail delivery takes between two and five days. See, e.g., G. L. c. 51, § 26 (in absence of clear postmark, affidavits of registration to vote shall be accepted until fifth day after deadline); G. L. c. 156D, § 1.41 (*f*) (2) (making notice of corporate filings effective five days after mailing); 651 Code Mass. Regs. § 1.05 (2002) (deeming communications from Department ·of Elder Affairs to be received three days after mailing); 106 Code Mass. Reg. § 366.320(A) (2005) (directing food stamp eligibility workers to consider postmark date plus two days for mailing in deciding timeliness of application). See also Mass. R. Civ. P. 6 (d), 365 Mass. 747 (1974); Mass. R. A. P. 14 (c), 365 Mass. 859 (1974). Given these circumstances, it would have been reasonable to infer, and therefore substantial evidence exists, to support a finding that the letter was postmarked on or before December 21, 1998. Cf. *Commonwealth* v. *Nwachukwu,* 65 Mass. App. Ct. 112, 114 (2005) (making reasonable inference in absence of record evidence); *Rodriguez* v. *American Laundry Mach., Inc.,* 878 F.2d 556 (1st Cir. 1989) (relying on evidence of date of cover letter and prepaid return postcard, stamped by sender's postage meter, as evidence of date of mailing).

[4]The commission's rules of practice and procedure in effect at the time of Deutschmann's appeal have since been replaced by the standard adjudicatory rules of practice and procedure. See 801 Code Mass. Regs. § 1.01. The rules now in place provide for essentially the same procedure for perfecting an appeal. 801 Code Mass. Regs. § 1.01 (4)(b). Although the commission may choose to adopt voluntarily the standard rules, as it has now done, it is not required to do so, because of its exclusion from the requirements of G. L. c. 30A, § 9, by the definition of "[a]gency" in G. L. c. 30A, § 1 (2). Such

sion further contends that the promulgation of this rule was a valid exercise of its authority under G. L. c. 31, § 2 (*g*), which allows the commission "[t]o adopt such rules of procedure as necessary for the conduct of its proceedings." In the commission's view, the letter from Deutschmann, dated December 17, 1998, constitutes a timely appeal under rule 2.4 (a)(3).

The town responds that a plain reading of G. L. c. 31, § 43, requires the commission to receive the appeal within ten days of the appointing authority's decision. According to the town, we need not invalidate rule 2.4 (a)(3) in order to agree with its position because the commission's rule applies only to filings that occur after the appeal has been initiated — to allow otherwise would be an impermissible expansion of the commission's jurisdiction.

The disagreement in this matter focuses on the phrase "appeal in writing," as used in G. L. c. 31, § 43.[5] Were we to conclude that this statutory language was clear, our inquiry would end by giving effect to its plain and ordinary meaning. *Milford* v. *Boyd*, 434 Mass. 754, 756 (2001). Our reading of this language, however, does not evince the unambiguous meaning the town would assign to it. "When a statute is 'capable of being understood by reasonably well-informed persons in two or more different senses,' it is ambiguous." *AT&T* v. *Automatic Sprinkler Appeals Bd.*, 52 Mass. App. Ct. 11, 14 (2001), quoting *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748, 753 (1996). Such statutory language is at issue here.

The relevant question left unanswered by G. L. c. 31, § 43, is the precise manner in which an appeal is deemed to have been perfected so as to comply with the ten-day deadline. The town argues that an appeal must be filed, i.e., received, in the com-

---

statutory exclusion, however, does not remove the commission from the list of administrative bodies to which we owe considerable deference in appropriate circumstances. G. L. c. 31, § 44 (applying deferential standard contained in G. L. c. 30A, § 14, to judicial review of commission). See *Brackett* v. *Civil Serv. Comm'n, ante* 233, 241-242 (2006); *Andrews* v. *Civil Serv. Comm'n*, 446 Mass. 611, 615-616 (2006).

[5]General Laws c. 31, § 43, states: "If a person aggrieved by a decision of an appointing authority made pursuant to [§ 41] shall, within ten days after receiving written notice of such decision, appeal in writing to the commission, he shall be given a hearing . . . ."

mission's office within the ten-day period.[6] Section 43 does not specify any particular act required to perfect an appeal. The statute's plain language does not state that the appeal must be "filed" in a particular place within ten days. Contrast *Harper* v. *Division of Water Pollution Control*, 412 Mass. 464, 466 (1992) (appeal in nature of judicial review under G. L. c. 30A, § 14 [1], requires filing complaint "in the court" within specified time).

This court has recognized the particular significance of the word "filed" in the context of an appeal. Generally, it connotes the "receipt" of the appeal, absent an express intent to the contrary. See *Garrett* v. *Director of the Div. of Employment Sec.*, 394 Mass. 417, 420 (1985). The absence of the word "filed" in the relevant sentence of § 43 is persuasive evidence of a legislative intent that an appeal need not be actually received (filed) within the ten-day appeal period.[7] Although the statute permits the construction urged by the town, it does not require that construction; it also permits the construction adopted by the commission.

In its adoption and application of rule 2.4 (a)(3), the commis-

---

[6]Of the many cases cited by the town in support of its view, only *Curley* v. *Lynn*, 408 Mass. 39 (1990), is a review by this court of the commission's interpretation of statutory language. There we held that the commission had acted outside the scope of its statutory authority by expressly allowing litigants to extend the deadline for appeal by filing a motion to rehear or reconsider. *Id.* at 41-42. No such express contradiction of the statute is created by rule 2.4 (a)(3). To conclude otherwise would be to agree with the town's view that the phrase "appeal in writing" in G. L. c. 31, § 43, clearly requires receipt by the commission within the required time period. Because we determine the statutory language at issue here to be ambiguous, the *Curley* case is distinguishable.

[7]In the sentence following the "appeal in writing" language, the statute states: "Said hearing shall be commenced in not less than three nor more than ten days after filing of such appeal . . . ." G. L. c. 31, § 43. The town claims that this section transforms the language of the previous sentence from "appeal in writing" to mean "file an appeal." To support this argument, the town contends that the three-to-ten day statutory deadline for commencing a hearing could be compromised by equating filing with mailing because the appeal may not be received by the commission before that time has at least partly expired. According to the town, the Legislature could not have intended such a result. The town's theory misunderstands the nature of perfecting an appeal, which need not be contemporaneous with filing. The commission may file the appeal on receipt, even after the ten days has expired, without offending the statute.

sion has taken the equally plausible view that an appeal is deemed to have been perfected on the day of the postmark. The reasonableness of this interpretation is underscored not only by the commission's long-standing use of the postmark rule in this context,[8] but also by the ubiquity of the rule in analogous circumstances.[9] See 801 Code Mass. Regs. § 1.01 (4)(b) (1998) (standard adjudicatory rules of practice and procedure, which

[8]The commission's rules of practice and procedure at issue here have an effective date of July 1, 1981. Section 8 of the Civil Service Commission Rules of Practice and Procedure, State Agency Practice (Oct. 1994). Prior to that, the commission's rules stated: "All communications, including correspondence, motions and pleadings, shall be deemed to be filed with the Commission on the date on which they are actually received by the Commission at its office." Rule 2.2 of the Civil Service Commission Rules of Practice and Procedure, 97 Mass. Reg. 59, 62 (March 9, 1978). In the years since its enactment, litigants before the commission have come to rely on the postmark rule as a standard of practice. Additionally, in 1981 the General Court was in the midst of revising G. L. c. 31, acting on the recommendations of a special commission established by Res. 1979, c. 10. The result was St. 1981, c. 767, an emergency act that was approved in its final form on January 4, 1982, and made into law the language that is contested in this case. "Significance in interpretation may be given to a consistent, long continued administrative application of an ambiguous statute . . . especially if the interpretation is contemporaneous with the enactment." *Cleary* v. *Cardullo's Inc.*, 347 Mass. 337, 343 (1964), and cases cited. In light of our jurisprudence in this area, we cannot treat the timing of these revisions as coincidence. Moreover, we may presume that the Legislature has been aware of the commission's adoption of the postmark rule during the last twenty-five years. See *McCarty's Case*, 445 Mass. 361, 366 (2005). The absence of any legislative objection whatsoever during that time is telling.

[9]The Legislature has provided for an administrative "appeal in writing" in the following circumstances: G. L. c. 7, § 25A (transfer of certain supplies and equipment between State agencies); G. L. c. 30, § 49 (classification of office or position of State employee); G. L. c. 30, § 53 (determination of certain provisions relating to conditions of employment of State employees); G. L. c. 31, § 43 (at issue here — disciplinary decisions of appointing authority affecting civil service employees); G. L. c. 35, § 52 (classification of office or position of certain county employees); G. L. c. 44, § 69 (penalties for certain checks returned due to insufficient funds); G. L. c. 61, § 2 (classification of land for forest production); G. L. c. 111, § 5E (failure to grant or renew license to apply chemicals to control aquatic nuisances); G. L. c. 111, § 51 (failure of building or fire inspector to issue inspection certificate needed for application or renewal of license to operate hospital, home for unwed mothers, or clinic); G. L. c. 111, § 71 (same, concerning convalescent or nursing home, rest home, charitable home for aged, or intermediate care facility for mentally retarded); G. L. c. 128, § 25 (any proposed action by director of division of regulatory services of Department of Agricultural Resources); G. L. c. 132,

have now replaced commission's rules of practice and procedure); 452 Code Mass. Regs. § 1.02 (1997) (interpreting "filed" in G. L. c. 152, §§ 10A and 11C, to require postmark by deadline); 110 Code Mass. Regs. § 10.35(1)(c) (1993) (postmark rule for filings with Department of Social Services hearing officer); 310 Code Mass. Regs. § 1.01(3) (a)(3) (2004) (postmark rule in Department of Environmental Protection's adjudicatory process); 972 Code Mass. Regs. § 1.02 (2005) (definition of "[d]ate of [r]eceipt" is earlier of either arrival or date of postmark in context of appeals to Old King's Highway Regional Historic District Commission).

Given the two equally plausible readings of the statutory language, we defer to the commission's reasonable interpretation. We are guided by the familiar principle that "[a] state administrative agency in Massachusetts has considerable leeway in interpreting a statute it is charged with enforcing." *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196, 211 (1995), quoting A. Cella, Administrative Law and Practice § 747 (1986).[10] In reviewing such an interpretation, "we must apply all rational presumptions in

---

§ 26F (order to remove tree diagnosed with Dutch elm disease); and G. L. c. 149, § 44D (4) (adverse determination by division of capital asset management and maintenance on application for certificate of eligibility to submit bid or offer under State competitive bidding statute).

[10]The town's claim that this deferential standard of review is inapplicable here is unpersuasive. The town argues that, because the commission's expertise does not extend to timeliness, filing, and jurisdiction, such deference is unwarranted. As we have reaffirmed quite recently, the standard to be observed by a reviewing judge is one of "due weight to the *experience*, technical competence, and specialized knowledge of the agency, as well as to the *discretionary authority* conferred upon it" (emphasis added). *Brackett* v. *Civil Serv. Com'n, ante* 233, 241-242 (2006), quoting *Iodice* v. *Architectural Access Bd.*, 424 Mass. 370, 375-376 (1997). Whereas matters of timeliness, filing and jurisdiction may not be within the specialized knowledge of the commission, there can be little doubt of its experience as an adjudicatory body. The history of civil service in Massachusetts can be traced to just after the landmark Pendleton Act, passed by Congress in 1883. See generally *Arnett* v. *Kennedy*, 416 U.S. 134, 149 n.17 (1974). See also St. 1884, c. 320; *Opinion of the Justices*, 138 Mass. 601 (1885). Further, the statute that today authorizes the Civil Service Commission to hold adjudicatory proceedings was enacted in 1978, see St. 1978, c. 393, § 11, and the commission's role as an adjudicatory body predates that. See *Caulfield* v. *Fire Comm'r of Brookline*, 336 Mass. 569, 571-572 (1958). The commission's long tenure in this role very well may have augured in favor of the postmark rule, especially given the efficiencies it

favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Massachusetts Fed'n of Teachers, AFT, AFL-CIO* v. *Board of Educ.*, 436 Mass. 763, 771 (2002), quoting *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977). Such a regulation will be declared void only if there is an "absence of any conceivable grounds upon which [the rule] may be upheld." *Massachusetts Fed'n of Teachers, AFT, AFL-CIO* v. *Board of Educ., supra*, quoting *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 776 (1980). Thus, even if we were of the belief that the balance of the equation favored the town's interpretation, our role here is constrained considerably by the choice of the agency. See *Evans* v. *Contributory Retirement Appeal Bd.*, 46 Mass. App. Ct. 229, 233 (1999).

The town's argument is not saved by its claim that the postmark rule is challenged only to the extent that the commission employs it in the context of initial filings. The town seeks to avoid the burdens of a facial challenge to a regulation in favor of objecting to the manner in which the commission has chosen to interpret and apply it. This argument, however, ignores the principle that our deference to an administrative agency extends beyond appropriate instances of statutory interpretation also to include the agency's construction of its own regulations. "We only disturb an agency's interpretation of its own regulation if the 'interpretation is patently wrong, unreasonable, arbitrary, whimsical, or capricious.' " *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 17 (2000), quoting *Brookline* v. *Commissioner of the Dep't of Envtl. Quality Eng'g*, 398 Mass. 404, 414 (1986). Here, the commission has not merely adopted the postmark rule in its internal regulations, it has interpreted the rule to apply to pleadings that initiate its proceedings. Such a choice is not patently wrong, unreasonable, arbitrary, whimsical, or capricious just as it does not offend the statute.

Nor does the commission's interpretation of its postmark rule

creates for the great number of parties initiating appeals. Regardless, we also defer to the commission's interpretation of the statute in light of the discretionary authority conferred on it, see G. L. c. 31, § 2 (*g*), as will be explained.

improperly expand the jurisdiction afforded the agency by statute. We agree with the commission's reading of G. L. c. 31, § 2 (*g*), to authorize it to enact and apply the postmark rule to initial pleadings. Under that section, the commission is authorized "[t]o adopt such rules of procedure as necessary for the conduct of its proceedings." *Id.* The commission's rule 2.4 (a)(3), prescribing the date that papers should be deemed filed, is a rule of procedure. Cf. Mass. R. Civ. P. 6 (d), 365 Mass. 747 (1974); Mass. R. A. P. 14 (c), 365 Mass. 859 (1974).

Such a rule is also included among those that are necessary to the conduct of the commission's proceedings. The act of mailing the December 17, 1998, letter was the first act of the "proceedings," as that term is commonly understood, before the commission because it had the effect of initiating the appeal. Indeed, a litigant could initiate a proceeding with an untimely notice of appeal; such a proceeding would then be disposed of properly through a motion to dismiss. The commission's authority to prescribe rules concerning the conduct of its proceedings necessarily includes requirements of initiation. Without such rules the subsequent conduct of the proceeding would not exist.

3. *Reduction of penalty.* We turn now to the question whether the commission was justified in reducing Deutschmann's suspension from 180 days to sixty days. After Deutschmann appealed from the town's determination under G. L. c. 41, § 43, the commission was required to conduct a de novo hearing for the purpose of finding facts anew. *Sullivan* v. *Municipal Court of the Roxbury Dist.*, 322 Mass. 566, 572 (1948) (interpreting earlier version of statute); *Leominster* v. *Stratton*, 58 Mass. App. Ct. 726, 727-728 (2003). This requirement finds its origin in the language of the current statute: "If the commission by a preponderance of the evidence determines that there was just cause for an action taken against [Deutschmann] it shall affirm the action of the appointing authority . . . ." G. L. c. 31, § 43.

The commission's task, however, is not to be accomplished on a wholly blank slate. After making its de novo findings of fact, the commission must pass judgment on the penalty imposed by the appointing authority, a role to which the statute speaks directly. G. L. c. 41, § 43 ("The commission may also modify any penalty imposed by the appointing authority").

Here the commission does not act without regard to the previous decision of the town, but rather decides whether "there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision." *Watertown* v. *Arria*, 16 Mass. App. Ct. 331, 334 (1983).

Such authority to review and amend the penalties of the many disparate appointing authorities subject to its jurisdiction inherently promotes the principle of uniformity and the "equitable treatment of similarly situated individuals." *Police Comm'r of Boston* v. *Civil Serv. Comm'n*, 39 Mass. App. Ct. 594, 600 (1996). However, in promoting these principles, the commission cannot detach itself from the underlying purpose of the civil service system — "to guard against political considerations, favoritism, and bias in governmental employment decisions." *Falmouth* v. *Civil Serv. Comm'n*, 61 Mass. App. Ct. 796, 800 (2004), quoting *Cambridge* v. *Civil Serv. Comm'n*, 43 Mass. App. Ct. 300, 304 (1997).

Just as in the previous litigation in *Falmouth* v. *Civil Serv. Comm'n*, 61 Mass. App. Ct. 796, 800 (2004), there was no finding here by the commission that the penalty was rooted in any consideration other than Deutschmann's behavior on July 30, 1998, in concert with his prior record of misconduct.[11] Unless the commission's findings of fact differ significantly from those reported by the town or interpret the relevant law in a substantially different way, the absence of political considerations, favoritism, or bias would warrant essentially the same penalty. The commission is not free to modify the penalty imposed by the town on the basis of essentially similar fact finding without an adequate explanation. *Police Comm'r of Boston* v. *Civil Serv. Comm'n*, 39 Mass. App. Ct. 594, 600 (1996).

---

[11]The record before the commission indicates that Deutschmann was disciplined on no fewer than twenty-four occasions in the thirteen years prior to the Brenowitz incident. The infractions consisted of a range of violations from insubordination to failure to attend training. Prior to this case, Deutschmann had received separate three-, five-, and fourteen-day suspensions. The town cited Deutschmann's prior record of discipline in reaching its decision to suspend him for 180 days.

We are, regrettably, without the benefit of the town's complete decision.[12] The available record does include the portion of the decision in which the town administrator applies his factual findings to police guidelines in order to reach his conclusions and the portion in which he announces his decision of suspension. The record also includes the formal charges by the town against Deutschmann, the complaint of Brenowitz, subsequent interviews with Brenowitz by the police investigator, as well as the written report summarizing the police investigator's findings. With this evidence forming the history of the case prior to the town administrator's decision, as well as the negative inference that the town administrator was permitted to draw from Deutschmann's silence at the town hearing, it is clear that the town concluded that Deutschmann used a degree of force that was greater than that found by the commission. The town's charge alleged that Deutschmann "grabbed Rob Brenowitz, age 16, by the neck and pushed him up against a tree." On the basis of the commission's de novo fact finding, the commission determined that "[a]s Brenowitz attempted to walk away, [Deutschmann] put his hand to his chest preventing him from leaving," and further that "this was done in a way that caused Brenowitz to fall back into a tree trunk." The commission's findings did not go so far as to label Deutschmann's shove into the tree either accidental or purposeful.

We conclude that this difference in what is before us is too inconsequential to justify the reduction of the penalty imposed by the commission, especially where Deutschmann testified before the commission but not before the town. Although the commission found the victim and his friends not credible, and therefore the manner of violence effected by Deutschmann to be less egregious, the nature and gravamen of the violations remain

---

[12]While it is true that the commission performs a de novo fact-finding function, there is little reason for the commission to exclude the town's findings as the commission did in this case. While the commission must develop its own view of the facts, a review of the town's findings no doubt would assist the commission in determining whether "there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision." *Watertown* v. *Arria*, 16 Mass. App. Ct. 331, 334 (1983).

substantially unchanged.[13] "In these circumstances, where (1) there were no findings of political considerations, other improper bias, or inequitable treatment; (2) the town's decision involved a discretionary disciplinary decision regarding the enforcement of important standards of conduct; and (3) the charges for which discipline had been imposed were still satisfied by the remainder of the inappropriate conduct, the different subsidiary fact findings did not justify modification of discipline by the commission." *Falmouth* v. *Civil Serv. Comm'n*, 61 Mass. App. Ct. 796, 802-803 (2004). The town's 180-day suspension of Deutschmann was reasonably justified by the facts found by the commission, regardless whether he grabbed Brenowitz by the neck or pushed him in the chest.[14]

Moreover, in determining whether "there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision," *Watertown* v. *Arria, supra* at 334, the commission failed to account for the negative inference that the town administrator was permitted to draw from the refusal of Deutschmann to testify. We have long held that a party in a civil case seeking shelter under the privilege against self-incrimination of the Fifth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Constitution of Massachusetts may be the subject of a negative inference by a fact finder. *Lentz* v. *Metropolitan Prop. & Cas. Ins. Co.*, 437 Mass. 23, 26 (2002), citing *Kaye* v. *Newhall*, 356 Mass. 300, 305-306 (1969), and *Phillips* v. *Chase*, 201 Mass. 444, 450 (1909). This is true where the opposing party, or in the present case, the town, through the testimony of

---

[13]In addition to finding only that Deutschmann shoved Brenowitz, rather than grabbing him by the neck, the commission also concluded that Deutschmann's actions did not violate Falmouth's policy on arrest and transportation procedure. However, we do not consider this significant in comparison with the other misconduct found.

[14]Indeed, the portion of the town's decision that references the police department's rules and regulations rests its conclusion that Deutschmann violated police policy on the use of force not on the degree of violence employed, but rather on the absence of justification, finding that "[n]o imminent need to preserve the peace . . . was present, no resistance to lawful arrest . . . was present, no self-defence or defence of another . . . was present."

the complainant, Robert Brenowitz, has established a case adverse to the party invoking the privilege. *Quintal* v. *Commissioner of the Dep't of Employment & Training*, 418 Mass. 855, 861 (1994), quoting *Custody of Two Minors*, 396 Mass. 610, 616 (1986). In light of Deutschmann's refusal to tell his side of the story before the town administrator, ostensibly an integral part of the "circumstances found by the commission to have existed when the appointing authority made its decision," *Watertown* v. *Arria, supra* at 334, the discipline imposed by the town was reasonable. To pass judgment on the town's conclusion without accounting for Deutschmann's silence at its hearing would be fundamentally unfair to the town and, in doing so, the commission committed error.

4. *Conclusion.* The judgment of the Superior Court is reversed. Under rule 2.4(a)(3) of the commission's rules of practice and procedure then in effect, Deutschmann made a timely appeal from the town's decision. The commission's decision improperly substituted its judgment for that of the appointing authority in reducing Deutschmann's suspension to sixty days from 180 days. Therefore, Deutschmann's discipline is reinstated to the original 180-day suspension decided by the town of Falmouth.

*So ordered.*