PAVIAN, INC. *vs.* ROBERT E. HICKEY, JR., & another.[1]

Barnstable. September 2, 2008. - October 29, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, CORDY, & BOTSFORD, JJ.

*Employment Security,* Appeal, Timeliness of request for hearing.

In an action to review a decision of the board of review of the division of
unemployment assistance (board) that the defendant employee was entitled
to receive unemployment benefits, the District Court judge properly
concluded that the employee's appeal to the board (which had been
postmarked before, but not received by the board until after, the statutory
appeals period had expired) was timely, where by enacting G. L. c. 151A,
§ 40, the Legislature did not intend to reject the postmark rule contained
in 801 Code Mass. Regs. § 1.01(4)(b) as it applies to appeals to the board.
[493-497]

CIVIL ACTION commenced in the Orleans Division of the District
Court Department on September 23, 2005.

The case was heard by *Robert A. Welsh, Jr., J.*

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*David Hadas,* Assistant Attorney General, for Division of
Unemployment Assistance.

*T. Richard McIntosh (Margaret Monsell* with him) for the
defendant.

*John C. Creney* for the plaintiff.

*Patti A. Prunhuber & Monica Halas,* for Employment Rights
Coalition & others, amici curiae, submitted a brief.

MARSHALL, C.J. General Laws c. 151A, § 40, governs the
timeliness of administrative appeals involving unemployment
insurance claims.[2] The sole issue in this case is whether an

---

[1] Division of Unemployment Assistance.

[2] General Laws c. 151A, § 40, provides: "A claimant or interested party
may, within thirty days after mailing to him of notice of the decision, file an
application for a review of such decision by the board of review."

employee's appeal to the board of review (board) of the division of unemployment assistance (division)[3] was filed within the thirty-day appeals period required by G. L. c. 151A, § 40, when it was postmarked before, but not received by the board until after, the statutory appeals period had expired. A judge in the District Court concluded that the appeal was timely. The Appeals Court disagreed and reversed. *Pavian, Inc.* v. *Hickey,* 70 Mass. App. Ct. 477 (2007). We granted the employee's application for further appellate review, and now affirm the judgment of the District Court.[4]

1. *Background.* Robert Hickey, Jr., was employed by Pavian, Inc. (Pavian), as a chef. On December 8, 2004, Pavian discharged Hickey for the alleged theft of plastic bags and for serving the remains of a leg of lamb to himself and another employee as an employee meal. Hickey applied for unemployment benefits to the division, which approved his application. Pavian then requested and received a hearing before a review examiner, who concluded that Hickey was not entitled to benefits because he had been discharged for "deliberate misconduct in wilful disregard of the employing unit's interest." G. L. c. § 151A, § 25 (*e*) (2). The transmission memorandum accompanying the examiner's decision notified Hickey that he "may Appeal this Decision to the Board of Review. The last date to file an Appeal is April 15, 2005."

Title 801 Code Mass. Regs. § 1.01(4)(b) (postmark rule), applicable to proceedings before the board and other administrative agencies, provides that "[a]ll papers filed by U.S. mail shall be deemed filed on the date contained in the U.S. postal cancellation stamp or U.S. postmark . . . ." Represented by counsel, and in reliance on the regulation, Hickey mailed his appeal to the board in an envelope postmarked April 15, 2005.[5] The board received the application on April 19, 2005. After

---

[3]A decision by a review examiner of the division of unemployment assistance (division) of an unemployment insurance claim is reviewable by its board of review (board). The board exists within the Department of Labor and Workforce Development. See G. L. c. 23, § 9N (*b*); G. L. c. 151A, § 40.

[4]We acknowledge the amicus brief of Employment Rights Coalition, Massachusetts Employment Lawyers Association, Western Massachusetts Legal Services, and Greater Boston Legal Services filed in support of the defendants.

[5]The envelope in which the application was mailed is not in the record, but

somewhat extended proceedings before the board,[6] the board reversed the decision of the review examiner and on August 25, 2005, concluded that Hickey was entitled to receive unemployment benefits.[7]

Pursuant to G. L. c. 30A, § 14, Pavian then filed a complaint for judicial review in the District Court,[8] claiming for the first time that Hickey's appeal to the board was not timely.[9] A judge in the District Court disagreed, holding that the "effective" date of the appeal was the date on which it was postmarked. The Appeals Court disagreed. In essence, the Appeals Court concluded that by applying the postmark rule of 801 Code Mass. Regs. § 1.01(4)(b) to the thirty-day period to "file an application for a review" pursuant to G. L. c. 151A, § 40, the District Court judge impermissibly overrode the Legislature's intent that application for review actually be received by the board within the appeal period ("receipt rule").[10] *Pavian, Inc.* v. *Hickey, supra* at 482-483. The Appeals Court reversed the judgment in favor of Hickey and remanded the case for dismissal of Hickey's appeal. *Id.* at 483.

there is no dispute among the parties that it was postmarked on April 15, 2005.

[6]After initially receiving and processing the appeal, the board remanded the case to the review examiner for further factual findings. The review examiner issued consolidated findings, and the matter was returned to the board on May 17, 2005. Several weeks later, on June 7, 2005, the board again remanded the case to the review examiner for additional evidence and findings of fact. On August 9, 2005, the review examiner issued consolidated findings of fact.

[7]The board concluded that "[t]he employer has not proven by substantial and credible evidence that the claimant committed theft or that his actions constitute deliberate misconduct in willful disregard of the employer's interests." The board credited Hickey's testimony that he had intended to pay for the plastic bags and that he was authorized to decide what food could be served to employees.

[8]General Laws c. 30A, § 14, provides, in pertinent part: "Except so far as any provision of law expressly precludes judicial review, any person or appointing authority aggrieved by a final decision of any agency in an adjudicatory proceeding, whether such decision is affirmative or negative in form, shall be entitled to a judicial review thereof . . . ."

[9]The fact that Pavian had not raised the timeliness of the appeal earlier is of no consequence, as the issue here is one of jurisdiction.

[10]The Appeals Court noted that the judge did not explicitly invoke the postmark rule, but applied it implicitly. *Pavian, Inc.* v. *Hickey,* 70 Mass. App. Ct. 477, 479 (2007).

2. *Discussion.* In reversing the District Court, the Appeals Court relied principally on our decision in *Falmouth* v. *Civil Serv. Comm'n*, 447 Mass. 814 (2006). There we held that the court would defer to the decision of the Civil Service Commission (commission) to apply the postmark rule to its administrative appeals where the relevant statutory provision provided that a grievant may "appeal in writing" to the commission, see G. L. c. 31, § 43, and where the Legislature empowered the commission to adopt the procedural rules necessary to conduct its business, see G. L. c. 31, § 2 (*g*). *Id.* at 815, 817. We reasoned that, because the statutory language neither specifies "any particular act required to perfect an appeal," nor identifies any particular place in which an appeal must be filed, we would not unsettle the longstanding reliance on the postmark rule. *Id.* at 819.

General Laws c. 151A nowhere defines the term "file." Thus, although G. L. c. 151A, § 40, permits the construction reached by the Appeals Court and urged by Pavian, neither the statute itself nor our decision in *Falmouth* v. *Civil Serv. Comm'n, supra*, demands it. The substantial deference owed to an agency's interpretation of a statute it is charged to enforce "includes approving an interpretation of statutory language that may be read in two ways." *Alliance to Protect Nantucket Sound, Inc.* v. *Energy Facilities Siting Bd.*, 448 Mass. 45, 50-51 n.6 (2006). Such deference is particularly appropriate here because the legislative history of the statute does not evince any legislative intent to dislodge the postmark rule in determining the timeliness of appeals to the board. Moreover, the issue arises against the backdrop of a legislative directive of thirty years to provide uniformity to the procedural rules of agency determinations, of which the postmark rule is one.[11]

In 1978, the Commissioner of Administration,[12] as directed

---

[11]In 1977, the Legislature codified "An Act providing for uniform rules of adjudicatory procedure," which required the Commissioner of Administration to promulgate "rules and regulations for the conduct of adjudicatory proceedings . . . which shall be in effect for all state agencies within the executive offices except as provided in this section. Rules established by the commissioner of administration pursuant to this section shall be referred to as the 'standard rules'. Said standard rules shall include, but not be limited to . . . administrative review of the agency's decision." G. L. c. 30A, § 10, as appearing in St. 1977, c. 965.

[12]The Commissioner of Administration is now known as the Secretary of

by the Legislature, promulgated the Standard Adjudicatory Rules of Practice and Procedure, 801 Code Mass. Regs, §§ 1.00, 138 Mass. Reg. 167-205 (Dec. 29, 1978) (standard rules). Among other regulations, the standard rules contained the postmark rule. *Id.* at 191-192.[13] As the Appeals Court recognized, "the standard adjudicatory rules include the postmark rule," *Pavian, Inc.* v. *Hickey, supra* at 483, and the standard rules "apply to the board proceeding in question in this case." *Id.* at 479. In view of this long-standing practice of the board, we may defer to the agency's rule-making decision. This is so for another reason.

In 1990, after the postmark rule had been in force for eighteen years specifically for the board, and for twelve years generally in the standard rules, the Legislature revisited and extensively amended G. L. c. 151A, governing unemployment compensation. St. 1990, c. 154. Among other changes, G. L. c. 151A, § 40, see St. 1970, c. 421, was amended to increase the appeals period from ten days to thirty days, see St. 1990, c. 154, § 29. The amendment did not undermine the division's long-standing use of the postmark rule in such circumstances. When the Legislature revisits and amends a statute without changing the language at issue after a court or agency has construed it, we may conclude that the Legislature intended to incorporate authoritative agency and judicial interpretations of the language into the amended statute. We may presume the Legislature was aware of the board's long-standing application of the postmark rule to appeals lodged before it, and certainly the Legislature knew how to direct the board to apply a different procedural rule. See *Falmouth* v. *Civil Serv. Comm'n, supra* at 820 n.8 ("[W]e may presume that the Legislature has been aware of the commission's adoption of the postmark rule during the last twenty-five years. . . . The absence of any legislative objection whatsoever during that time is telling" [citation omitted]). See also *Alves's Case*, 451 Mass.

---

the Executive Office of Administration and Finance. G. L. c. 7, § 4.

[13]The 1978 postmark rule was not a novel innovation. It was consistent with the rule that the board itself had promulgated six years earlier specifically to govern its review of unemployment insurance claims. In March, 1972, the board adopted regulations stating that "it shall be deemed that any application for review has been received as of the date indicated by the postal cancellation stamp thereon or the date of filing such application in person."

171, 180 (2008) (because we presume "that the Legislature is aware of the 2002 decision by the board . . . and has not acted to amend the statute, we cannot state that the board's continual reliance on its holding . . . is unreasonable").

To a lesser extent, the Appeals Court also relied on our holdings in *Harper* v. *Division of Water Pollution Control*, 412 Mass. 464, 466-467 (1992), and *Garrett* v. *Director of the Div. of Employment Sec.*, 394 Mass. 417, 420 (1985). Those opinions are distinguishable for two reasons. First, the statutes at issue expressly state that filing is perfected in a particular place.[14] Second, those cases concerned judicial review and not administrative appeals, and therefore did not carry with them the postmark rule's long history of use and persistent vitality in standard administrative procedure.[15]

Although the Appeals Court concluded that the postmark rule was incompatible with the word "file" in G. L. c. 151A, § 40, there are many regulatory and statutory circumstances in which the date of "filing" is defined as the date of mailing. As described above, the standard rules include the postmark rule. See 801

---

[14]In contrast to the language at issue in *Harper* v. *Division of Water Pollution Control*, 412 Mass. 464, 465 (1992) ("commenced in the court," G. L. c. 30A, § 14 [1]), and *Garrett* v. *Division of the Div. of Employment Sec.*, 394 Mass. 417, 417 (1985) ("filing . . . in [an appropriate] district court," G. L. c. 151A, § 42), G. L. c. 151A, § 40, does not direct how or where to file an application for review. See *Falmouth* v. *Civil Serv. Comm'n*, 447 Mass. 814, 819 (2006) ("The statute's plain language does not state that the appeal must be 'filed' in a particular place within ten days").

[15]In *Harper* v. *Division of Water Pollution Control, supra*, we considered the meaning of G. L. c. 30A, § 14, which authorizes actions for judicial review of agency decisions and requires that they "be commenced in the court" within thirty days of receipt of notice of an agency's adverse decision. We rejected the argument that, under Mass. R. Civ. P. 3, as amended, 385 Mass. 1215 (1982), the action could be commenced by mailing, concluding that a "rule of court cannot override a contrary statutory provision concerning the manner and time for the effective taking of an appeal from an administrative agency." *Id.* at 465. *Garrett* v. *Director of Div. of Employment Sec., supra*, addressed G. L. c. 151A, § 42, which provides that an aggrieved party may obtain judicial review of an adverse decision of the board. There we noted, *id.* at 418, that G. L. c. 151A, § 42, provides that an appeal to the District Court is to be "governed by the Rules of Civil Procedure for the district courts" which, as the court in the *Garrett* case recognized, explicitly reject the postmark rule. *Id.* at 420 (rule "provides that any paper received by a clerk, whether by mail or by hand, shall be deemed filed as of the date of receipt").

Code Mass. Regs. § 1.01(4)(b). Other agencies have expressly defined "file" to include the postmark rule.[16] Many rules that refer to filing set forth criteria for determining the moment at which filing has occurred. See, e.g, Mass. R. Civ. P. 77 (c), 365 Mass. 837 (1974) (papers "shall be deemed to have been filed as of the date of receipt"). Indeed, the filing deadlines with which claimants may be most familiar — the Commonwealth's and the United States's annual deadlines to "file" taxes — both employ the postmark rule.[17]

Construing the filing requirement of G. L. c. 151A, § 40, to permit the postmark rule also comports with the statute's general purpose. The Legislature has directed the unemployment benefits statute to be "construed liberally in aid of its purpose, which purpose is to lighten the burden which now falls on the unemployed worker and his family." G. L. c. 151A, § 74. Workers who are discharged from their jobs through no fault of their own face hardship and anxiety, which should not be exacerbated by administrative procedures governing their appeals. There is only one division office in the Commonwealth. Exclusive use of the receipt rule could force hardship on many claimants requesting

[16]See, e.g., 452 Code Mass. Regs. § 1.02 (2008) ("Filed as used in [G. L.] c. 152, §§ 10A and 11C and as used in 452 [Code Mass. Regs. §§ ] 1.11[1] and 1.15[1] shall mean placement of the appeal in the mail to the Department postmarked no later than midnight on the 14th day when appealing a conference order under [G. L.] c. 152, § 10A, and the 30th day when appealing the decision of an administrative judge pursuant to [G. L.] c. 152, § 11C"); 110 Code Mass. Regs. § 10.35(1) (1993) ("All papers which must be submitted to the hearing office will be considered to be filed as follows: . . . Papers which are mailed shall be considered filed on the date postmarked"); 310 Code Mass. Regs. § 1.01(3)(a)(3) (2004) ("Unless otherwise provided by law, placing in United States mail shall be considered filed on the date postmarked"); 972 Code Mass. Regs. § 1.02 (2005) ("Date of Receipt as it applies to appeals shall be the date upon which a written appeal is received by Commission counsel or properly postmarked, whichever is earlier").

[17]"If any return . . . required to be filed with the commissioner . . . within a prescribed period or on or before a prescribed date is, after such period or date, delivered by United States mail . . . the date of the United States postmark . . . shall be deemed to be the date of delivery or the date of payment as the case may be." G. L. 62C, § 33A. Congress has also codified the postmark rule as the date a Federal tax return is filed. "If any return, claim, statement, or other document required to be filed . . . within a prescribed period . . . is, after such period or such date, delivered by United States mail . . . the date of the United States postmark . . . shall be deemed to be the date of delivery." 26 U.S.C. § 7502(a)(1) (2000).

appeals by requiring them either to travel great distances or to pay for expedited means of transmission (such as facsimile or messenger service) with funds they do not have or cannot afford to pay. No matter how far in advance a claimant mails his or her application for review, he or she can never be certain that it will be received on time. It would be excessively burdensome and costly to require claimants remote from the division's office to monitor rigorously the transmission of their applications to be certain that their appeals were timely, as exclusive use of the receipt rule would require.[18]

3. *Conclusion.* For the foregoing reasons, we conclude that by enacting G. L. c. 151A, § 40, the Legislature did not intend to reject the postmark rule as it applies to appeals to the board of review.

*Judgment affirmed.*

---

[18]The Executive Office of Labor and Workforce Development reported in a February 15, 2008, letter that, in 2007, "[n]early 80% of all appeals submitted come to us by mail. About 20% come in by [facsimile transmission]. Only a handful are delivered in person, perhaps totaling 1% to 2%. Nearly all of the [transmitted] appeals are from employers, and it is used as the method of delivery in about half of all employer appeals. Substantially all of the claimant appeals are submitted by mail." That office also noted that 11% of all appeals in 2006 were received after the thirty-day deadline even though they were postmarked timely.