Wilkins, Douglas H., J.
The Town of West Bridgewa-ter (“Town”) terminated plaintiff, Daniel Desmond (“Mr. Desmond”) from the position of police officer for his “continued pattern of lying/periury [and] conduct unbecoming [a police officer] . . .[2] Serious as these charges are,[3] the Town arguably tolerated worse among one or more of its well-connected police officers without termination of employment. The key issue in this appeal is therefore not misconduct; it is favoritism, which the Commission’s findings failed to resolve.
This case arose upon Desmond’s appeal under G.L.c. 30A, §14 from a final decision (“Decision”) of the Civil Service Commission (“Commission”) upholding the Town’s decision to terminate his employment as a police officer. Pursuant to Standing Order 1-96, Mr. Desmond has filed a Motion for Judgment on the Pleadings (“Motion”), which the Commission has opposed. After review of the administrative record, motion and memorandum and upon consideration of oral arguments, the Motion is ALLOWED.
BACKGROUND
Desmond was employed as a West Bridgewater Patrolman for 17 years before his termination in February 2014. He had no significant prior disciplinary record.
The charges against him arose out of his relationship with a married woman referred to as Mrs. A. Ultimately, Mrs. A. completed an application for a restraining order against her husband under G.L.c. 209A. Desmond called the Brockton Police to obtain information about who was on duty. Desmond denied—ultimately under oath in Brockton District Court on September 9, 2013—that he assisted Mrs. A. in completing the 209A Application.
Later on November 2, 2013, Mrs. A. told Desmond that she had decided to leave her husband, who responded by making threats. Desmond told her to report this to the Brockton Police Department. Again, Desmond ultimately denied under oath that he helped Mrs. A. complete the form. However, the Town introduced a videotape showing that Desmond was present when Mrs. A. filled out the c. 209A application. On November 4, 2013, Mrs. A. and Desmond appeared in the Brockton District Court for an extension of the c. 209A order. The matter was continued to November 8, when a tape-recorded hearing occurred. The Court asked Desmond about his relationship with Mrs. A. and asked whether he had ever “seen” the c. 209A affidavit. Based upon record testimony, the Commission found that Desmond gave false answers to both questions. The Court denied the c. 209A extension and stated that he found Desmond’s testimony “not credible.”
West Bridgewater Lieutenant Victor Flaherty received information that Desmond had been harassing Mr. A. and his wife and that Desmond was running unauthorized probation checks on both of them. He began an investigation of Desmond. Desmond testified that he and Lt. Flaherty did not have a good relationship, ever since Desmond had angrily confronted Lt. Flaherty four months earlier regarding the suicide of a fellow officer whom Lt. Flaherty was investigating. Lt. Flaherty denied this. Instead of resolving that dispute, the Commission stated: “I was unable to reach a conclusion as to whether this alleged conversation, or a version of it, ever took place.” It pointed *365 out that Lt. Flaherty did not make the decision to terminate Desmond and that “all of the supportable charges against Mr. Desmond stand independent of any action taken by Lt. Flaherty.”
On December 11, 2014, the Commission affirmed the Town’s order that Mr. Desmond be terminated from employment as a police officer for giving false testimony under oath and for conduct unbecoming an officer. It found that “Mr. Desmond made multiple untruthful statements” as follows:
Desmond testified in District Court that he had never seen Mrs. A.’s affidavit when, in fact, he had seen the affidavit while she was preparing it and while Mrs. A. was in a separate room talking to an on-call Judge.
Desmond testified in District Court that he never came into the courthouse on September 9, 2013, when he came into the courthouse with Mrs. A., escorted her to the Clerk’s office and left the building without entering the court room.
Desmond testified in District Court on November 8, 2013 that he had never been to Mrs. A.’s house, when he had in fact been there only six days earlier.
On December 23, 2013, in response to a question from Brockton Police Officer Christopher Perez, Desmond denied being in the neighborhood when in fact he had been, as verified by a license plate reported by a neighbor. Only then did Desmond admit that he had been there. On December 25, 2013, Desmond’s report of the events omitted the exchange between Officer Perez and himself. The Commission credited Officer Perez’s version of these events.
The Commission also found that Desmond engaged “in conduct unbecoming a police officer when he used police department technology to conduct an inquiry of Mrs. A. under the Interstate Identification Index.” However, it found that “[t]he Town did not show, by a preponderance of the evidence, that it was unlawful or a violation of any rule for Mr. Desmond to run an inquiiy on the license plate numbers of vehicles registered to Mr. or Mrs. A.”[4] The Commission also found that the Town failed to show that Desmond used his position as a police officer to influence police activity and failed to prove that Desmond harassed Mrs. A.
The hearing officer stated:
While I have not reached all of the same findings as the Town in regard to each of the alleged charges, I have, similar to the Town, concluded that Mr. Desmond engaged in untruthfulness and conduct unbecoming an officer, both of which warrant disciplinary action against Mr. Desmond.
The hearing officer then turned to the question whether the “town was justified in the level of discipline imposed—termination.” His treatment of that issue is set forth in the “Discussion” section below.
Mr. Desmond presented proof that the Town retained a fellow officer, Officer Kominsky, despite facts that, in the hearing officer’s words, provided the Town “with ample reason to review whether that police officer [Kominsky] should be terminated, which he wasn’t.” In the federal prosecution entitled United States v. Henderson, 229 F.Sup.2d 35 (D.Mass 2002), affd, 463 F.3d 27 (1st Cir. 2006), District Judge Mark Wolf found that Patrolman Kominsky was “perhaps the worst law enforcement witness, who was trying to be candid, assuming he was tiying to be candid that I’ve ever encountered.” The United States Court of Appeals for the First Circuit found Officer Kominsky’s testimony “riddled with implausibilities and inconsistencies, and that it was disbelieved by the district court in important respects and contradicted by law enforcement witnesses in others.” United States v. Henderson, 463 F.3d 27, 28 (1st Cir. 2006). As a result, the First Circuit vacated Mr. Henderson’s conviction, including his sentence to sixteen years of incarceration. The hearing officer found it perplexing that the Town did not terminate Officer Kominsky or, indeed, take any disciplinary action against him.[5]
DISCUSSION
A. Standard of Review Under G.L.c. 30A, §14(7), this Court has limited power to set aside or modify the Decision. It may do so if his substantial rights may have been prejudiced because the agency decision is based on an error of law or on unlawful procedure, is arbitrary and capricious or unwarranted by facts found by the agency, or is unsupported by substantial evidence. G.L.c. 30A, §14(7)(c)-(g). Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). The court must consider the entire record, including whatever “fairly detracts” from the agency’s finding, but the Court has no power to substitute its judgment for that of the agency if the record contains substantial evidence to support conflicting propositions; nor may it second guess the agency’s judgment regarding credibility of witnesses and the weight to be given to particular evidence. See Doherty u. Retirement Commission of Medford, 425 Mass. 130, 135 (1997). When reviewing an agency decision, the court is required to give “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionaiy authority conferred upon it.” G.L.c. 30A, §14(7).
The appealing party bears the burden of demonstrating the invalidity of the agency decision. See Bagley v. Contributory Ret. Appeal Bd., 397 Mass. 255, 258 (1986). The Supreme Judicial Court has noted that the appellant’s “burden is heavy.” Springfield v. Dep’t of Telecomms. & Cable, 457 Mass. 562, 568 (2010) (citation omitted).
B. Imposition of Discipline
There is no serious dispute that the evidence regarding Mr. Desmond’s conduct supported a finding *366 that he testified untruthfully in court and misused the CGIS system. There is, accordingly, no serious question that discipline was warranted.
The Town had justification to take disciplinary action against Mr. Desmond for his “demonstrated willingness to fudge the truth in exigent circumstances” because “[plolice work frequently calls upon officers to speak the truth when doing so might put into question a search or embarrass a fellow officer.” Falmouth v. Civil Service Comm’n, 447 Mass. at 801, citing Cambridge, 43 Mass.App.Ct. at 303. The Commission had ample evidentiary support for upholding the Town’s decision to impose discipline because there was “reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision.” Falmouth v. Civil Service Comm’n, 447 Mass. 814, 823 (2006), quoting Cambridge v. Civil Service Comm’n, 43 Mass.App.Ct. 300, 303 (1997).[6]
C. Termination
1. Severity of the Sanction Itself
In determining whether the Town “was justified in the level of discipline imposed—termination” (A. 198), the Commission recognized two standards. The first applies to modification of penalties generally:
“The . . . power accorded the commission to modify penalties must not be confused with the power to impose penalties ab initio, which is a power accorded the appointing authority.” Falmouth v. Civ. Serv. Comm’n, 61 Mass.App.Ct. 796, 800 (2004), quoting Police Comm’r v. Civ. Serv. Comm’n, 39 Mass.App.Ct. 594, 600 (1996). Unless the Commission’s findings of fact differ significantly from those reported by the appointing authority or interpret the relevant law in a substantially different way, the commission is not free to “substitute its judgment” for that of the appointing authority, and “cannot modify a penalty on the basis of essentially similar fact finding without an adequate explanation.” E.g., Falmouth v. Civil Service Comm’n, 447 Mass. 814, 823.
It is true that the Commission upheld the most serious charge. The Commission, however, found a number of the Town’s charges unsupported. It rejected the harassment charge and a portion of the “conduct unbecoming” charge. The Commission did not address whether its findings “differ significantly” from those of the Town. The Court assumes that the Commission implicitly found that those findings did not “differ significantly” for purpose of modification of penalties generally. Considering Mr. Desmond’s case on its own, the Commission’s findings regarding the nature of the misconduct amply supported its determination not to overturn the termination as unduly harsh.
The Court cannot make the same assumptions or reach the same conclusion on the favoritism question. In the context, a “piling-on” of charges—later found unsubstantiated—against Desmond may support an inference of an animus against him. That animus may have resulted in harsher sanctions against disfavored employees, compared to more culpable, but favored, officers. The Commission never addressed that possibility or made findings on that question.
With this background, the Court turns to the Commission’s disparate treatment of Desmond and others.
2. Favoritism
In evaluating disparate treatment of civil service employees, the Commission correctly noted that it is guided by:
. . . the principle of uniformity and the equitable treatment of “similarly situated individuals” [both with and across different appointing authorities] as well as “the underlying purpose of the civil service system ... to guard against political considerations, favoritism and bias in governmental employment decisions.” Falmouth v. Civil Service Commission, 447 Mass. 814, 823 (2006), and cases cited.
Even if there are past instances where other employees received more lenient sanctions for similar misconduct, however, the Commission is not charged with a duty to fine-tune an employee’s discipline to ensure perfect uniformity." See Boston Police Dep’t v. Collins, 48 Mass.App.Ct. 408, 412 (2000).
A. 199 [sic].
In applying these rules, the Commission failed to make several crucial findings. The Court may reverse the Commission’s decision for failure to make “a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision.” G.L.c. 30A, §11(8). See Town of Brookline v. Comm’r of DEQE, 387 Mass. 372, 383-84 (1982). See Mayor of Revere v. Civil Service Commission, 31 Mass.App.Ct. 315, 326 (1991) (same rule in non-30A context). The Commission cannot meet the findings requirement by a mere recitation of evidence, without resolving the fact disputes. City of New Bedford v. Energy Facilities Siting Counsel, 413 Mass. 482, 490 (1992); Costello v. DPU, 391 Mass. 527 (1984). Insurance Rating Board v. Commissioner of Insurance, 359 Mass. 111, 118 (1971).
The Commission failed to make the necessary findings. For one thing, it failed to find sufficient facts to determine whether the Town violated the principle of uniformity and equitable treatment in terminating Mr. Desmond, while retaining Officer Kominsky. It called the Town’s failure to discipline Officer Kominsky a “perplexing action.” That only states the issue. The Commission found the failure to discipline Officer Kominsky “more troubling” than the Town’s additional failure to discipline the police chief when the MCAD *367 found not credible his pretextual reason under oath for his own gender discrimination.
In fact, the Town never offered an explanation for retaining Kominsky and terminating Desmond. Kominsky’s blatant falsehoods, resulting in a conviction and 16 years of prison time, later vacated, were much worse than Desmond’s conduct and involved highly material matters leading to prosecution, conviction and 16 years of prison time for the accused. No legitimate or rational explanation appears. Indeed, Officer Kominsky’s false testimony was highly material, while Mr. Desmond’s had little or no materiality to the ultimate decision.[7] By retaining Officer Kominsky, the Town set its own, exceedingly high threshold for discipline, namely that its policies tolerate continued employment of a police officer who has committed such conduct. If the Town now intends to announce a new policy to raise that threshold (as to past conduct) for Mr. Desmond, it must do so in a fair and uniform manner that does not violate Civil Service principles.
Even now, the Town offers no explanation why Officer Kominsky remains employed while Mr. Desmond does not. In the employment context, the absence of a rational, lawful explanation generally warrants an inference of an unlawful motivation. Cf. Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 97-99 (2009) (inference of discriminatory motive from a pre-textual reason in c. 15IB case).
The hearing officer never decided whether favoritism played a role in the different treatment of Kominsky and Desmond. Instead he simply wrote:
The facts as outlined in the Federal District Court and Court of Appeals decisions appear to have provided the Town with ample reason to review whether that police officer [Kominsky] should be terminated, which he wasn’t. Standing alone, however, the Town’s perplexing inaction in that case, does not justify overturning their valid decision here to terminate Mr. Desmond.
This reasoning did not resolve the material fact dispute. The key question is not whether the Town’s inaction justifies overturning a so-called “valid decision.”[8] It is whether the differential treatment arose from favoritism, contrary to the civil service laws. Only after determining whether the Town has violated the principle of equitable and uniform treatment could the Hearing Officer decide whether Mr. Desmond’s termination was justified. An equitable reason for the different treatment would have to be grounded in subsidiary facts. The Hearing Officer made no subsidiary or ultimate findings on the critical issue of favoritism.
Desmond did advance a reason for the different treatment, grounded in favoritism, namely that Desmond and Lt. Flaheriy had an angry encounter. The Commission’s job as fact-finder is to resolve such disputes, but, again, it did not do so. Its rationale for leaving this issue open—that Lt. Flaherty did not terminate Desmond and that “all of the supportable charges against Mr. Desmond stand independent of any action taken by Lt. Flaherty”—has force on the question of misconduct, but falls short on the question of discipline. Lt. Flaherty’s report resulted in unsubstantiated charges that the decision-makers most decidedly did adopt. The decision-makers not only found misconduct; they also decided that termination was the remedy, based upon all of the charges, including the ones rejected by the Commission. Lt. Flaherty’s animus, if any, therefore may well have played into the termination decision, even if some of his assertions had a basis.[9] Where no explanation existed on the record for the disparate treatment, the Commission erred in not resolving this factual dispute. If there was no argument, then the Commission needed to explore whether there was some other reason for the different treatment.
On this record, given the gaps in the Commission’s findings, there is no support for the proposition that, if Patrolman Kominsky’s conduct did not warrant dismissal by the Town, Desmond’s did. One might argue that it is beneficial to remove at least one dishonest officer from the force, even if the Town refuses to discharge them all. That argument does not justify favoritism, particularly where the record before the Commission suggests that the officer who has retained employment may have committed the more serious offenses. Indeed, there is no reason why the Town needs to settle for any dishonesty among its police officers and command. It could achieve uniform and equitable treatment by terminating both dishonest officers, or neither of them. The one thing it may not do is terminate two similarly situated civil service employees in violation of the principle of uniformity and the equitable treatment.
On this record, there are insufficient findings to draw a conclusion favorable to the Town. Short of fine tuning discipline to obtain perfect uniformity,[10] the Commission has a duty to articulate findings that support a conclusion of uniform and fair treatment as required by the Civil Service laws. Of course, remand may also allow the Town to choose how to remove favoritism from its disciplinary process.
CONCLUSION
For the above reasons:
1. The plaintiffs Motion is ALLOWED.
2. FINAL JUDGMENT SHALL ENTER REMANDING the Commission’s Decision for further findings and proceedings consistent with this Memorandum.

 Desmond was not found to have engaged in harassment, which was one of the original charges.

 Nothing in this decision condones police misconduct, particularly the giving of false testimony even on immaterial matters.

 For some reason, the Commission found that, although Desmond was “entitled to a copy of his criminal history record, it was inappropriate, at best, for him to run his own criminal history report for the sole purpose of giving it to his girlfriend to rebut alleged statements made against him by her husband.” The Commission never explained why it was “inappropriate” to give anyone information about Desmond’s own criminal record—particularly where that information was needed to rebut a false allegation. Given that the Commission does not sit in judgment of morality or propriety as such, it is unclear why the Commission believed that it was supposed to evaluate what was “appropriate.”

 he transcript includes multiple references to Officer Kominsky as an active, on duty police officer at the time of the events involved in this case. At one point, Lt. Flaherty apparently (it is not entirely clear) refers to Officer Kominsky as the West Bridgewater Police Association president.

 The Commission applied the rule that a claimant who does not testify at the hearing before the appointing authority may face an adverse inference that there was “reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision.” Falmouth v. Civil Service Comm'n, 447 Mass 814, 823 (2006), quoting Cambridge v. Civil Service Comm’n, 43 Mass.App.Ct 300, 303 (1997). Of course, such an inference would logically apply only to facts to which the claimant could have testified; it would be illogical to draw an inference against the claimant as to facts outside his knowledge, such as the inconsistent imposition of termination in cases of serious misconduct by other officers. See Falmouth, 447 Mass. at 823.

 The chief had his own credibility problems in an MCAD case, where his testimony was not credited on two occasions, and, on the most material issue possible, he was found to have given a pretextual reason for his discriminatory actions. As it explores the favoritism issue, the Commission is free to re-evaluate its treatment of the MCAD matter on remand, keeping in mind that it is not only the dishonesty that determines culpability, but also the materiality of the misstatement.

 The Hearing Officer was in no position to call the termination a “valid decision” until he resolved whether that decision reflected unlawful favoritism. But he could not do that without exploring, and making findings about, what led to the different treatment.

 Moreover, favoritism is not usually neatly cabined, but often permeates much of the command. Superior Officers often support subordinates’ recommendations.

 The difference between outright termination and continuing on duly without discipline hardly qualifies as “fine tuning” under, for instance, the case the hearing officer cited, Boston Police Dep’t v. Collins, 48 Mass.App.Ct. 408, 412 (2000) (five-day suspension).