BOARD OF SELECTMEN OF OXFORD *vs*. CIVIL SERVICE
COMMISSION & another.[1]

No. 93-P-884.

Worcester. September 20, 1994. - November 4, 1994.

Present: BROWN, KASS, & FINE, JJ.

*Civil Service*, Police, Notice. *Department of Personnel Administration.*

This court concluded that there was no statutory or regulatory authority
for the Civil Service Commission's approval of an order of the person-
nel administrator directing that a disabled pensioner's job status be
changed to "full-time police officer" [589-591]; moreover, the commis-
sion incorrectly concluded that a particular job title ("temporary full-
time permanent intermittent police officer") was not a proper occupa-
tional classification [591].

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on November 30, 1990, and March 29, 1991,
respectively.

The cases were consolidated and heard by *John C. Crat-
sley*, J.

*Joseph M. Hamilton* for the plaintiff.

*Austin M. Joyce* for Franklyn J. Jones.

KASS, J. Perhaps it was the relentless perversity of the job
title, "temporary full-time permanent intermittent police of-
ficer," that caused the Civil Service Commission (commis-
sion) and, in turn, the reviewing judge of the Superior Court[2]
to think something amiss with the work status assigned to
Franklyn J. Jones by the town of Oxford. Upon closer exami-
nation, however, we determine the job category not unlawful
and that the commission mistakenly required the State per-

---

[1]Franklyn J. Jones.

[2]Review was under G. L. c. 249, § 4, an action in the nature of
certiorari.

sonnel administrator to "convert" the job status of Jones to "full-time police officer" as of 1980.

From the administrative record returned by the commission in response to the complaint, see *Gloucester* v. *Civil Serv. Commn.*, 408 Mass. 292, 297 (1990),[3] we summarize the facts. Jones began work in Oxford as a "permanent intermittent police officer" in 1977. An intermittent officer does not work a full shift but fills in portions of a shift that are understaffed. "Intermittent police officer" was a recognized civil service job classification in Oxford to which Jones was appointed by the board of selectmen (board). See G. L. c. 31, § 6. The salary for an intermittent police officer was the same as the starting rate for a "regular police officer," but the regular officers, in accordance with a collective bargaining agreement, received step increases and benefits; intermittent officers did not. In 1980 there were enough officers on leave in Oxford so that Jones was able to do patches of work each day that added up to forty hours or more at the end of the week.

Jones continued to piece together work weeks of forty hours or better for the next four years. In 1982, the board altered the title of Jones from the familiar "permanent intermittent" to the discordant "temporary full-time permanent intermittent" police officer. The agency record does not dwell on why that was done, but testimony before the trial judge indicates that the new label was connected with extending to Jones certain insurance, vacation, and sick benefits for which he had lobbied the police chief and the board.[4] On August 12, 1984, Jones hurt his back while making an arrest. He received injured-on-duty benefits until April 27, 1986, the date on which he began to receive an accidental disability

---

[3]As to the nature of judicial review under G. L. c. 249, § 4, see also *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 300 (1985).

[4]As review in the nature of certiorari is limited to the record before the governmental body or officer that made the order complained of, the taking of fresh evidence in the Superior Court was not appropriate. Nothing decisive emerged from the testimony before the reviewing judge, however, and we regard the collateral evidence as informative but inconsequential.

pension authorized by the Worcester County retirement board. Eight months earlier, in September, 1985, Jones's name was included on a list of certified candidates for appointment to a regular full-time position, but he was passed over because of his injured condition. The following March, Jones's name again appeared on a list of eligible persons for full-time appointments. This time Jones declared that he would not accept appointment if offered.

Through his lawyer, Jones complained, on November 1, 1985, to the Department of Personnel Administration (see G. L. c. 7, § 4A) that he should have enjoyed the financial benefits of a full-time police officer in Oxford since the date he had begun working forty-hour weeks and, above all, that he was entitled to have his retirement benefits calculated as if he had been a full-time officer since July 13, 1980. That claim made leisurely progress to a hearing before the Civil Service Commission on June 20, 1989. The commission found as a fact that:

> "The policies of the Department of Personnel Administration prohibit any Appointing Authority from employing an individual in an intermittent status if such individual is working a regular, full-time work schedule for more than thirty days. In the latter situation, the Appointing Authority is obligated to submit a requisition so that a temporary appointment can be made from an eligible list."

As to the designation "temporary full-time permanent intermittent police officer," the commission observed:

> "The above designation is a misnomer, since an employee cannot be simultaneously temporary and permanent, and there is no authorization for such a designation under civil service law."

On the basis of the commission's determination and order, the State personnel administrator requested the commission to "correct Mr. Jones'[s] status from intermittent police of-

ficer to regular full-time police officer . . . as of August 31, 1980." As the next step of this singularly circular procedure,[5] the commission, on February 22, 1991, approved the personnel administrator's action.

What is wrong with the commission's action is that it rests on "policies" of the Department of Personnel Administration that prohibit an individual with "intermittent" status to work a regular full-time schedule for more than thirty days. The department may have such policies, but it has neglected to suggest a statutory source for them or to publish them in any regulation or personnel manual for municipalities (at least no such manual has been called to our attention).

We have found no statutory basis for the department's policy in c. 31, or any regulation promulgated by the personnel administrator or the commission under c. 31, § 3. Jones directs our attention to G. L. c. 31, §§ 31 and 59. Section 31 imposes a thirty-day limit on emergency appointment to a civil service position. Intermittent status, which is designed to fill expected gaps, is not the same as emergency status, which involves unforeseen and urgent need. Section 31 affords Jones no comfort, nor can the department's policies reasonably be deduced from G. L. c. 31, § 59, which equates 250 days of service to one year of service for purposes of promotion eligibility.

Somewhat closer to the department's position is G. L. c. 30, § 24B, which, stripped of detail, provides that an employee of the State, if assigned to perform duties of a position in a higher grade for more than thirty days, shall be boosted to the higher grade. Chapter 30, however, applies to State employees, not municipal employees. There are additional difficulties in attempting to extract from § 24B the policies the department and the commission espouse. Jones was not performing the duties of a higher grade job. An intermittent

---

[5]The reason for the circularity lies in St. 1976, c. 534, § 1, which authorizes the personnel administrator, *with the approval of the commission,* to restore or protect rights acquired by a person under the civil service laws (G. L. c. 31). One might suppose, of course, that if the commission directs the personnel administrator to do an act, it has already approved his or her doing it.

police officer in Oxford is in the same civil service series and grade as a regular full-time officer. Section 24B presupposes the existence of a vacancy in the higher grade job, and the record does not indicate that, during the time material, there was a full-time vacancy on the Oxford police force.

To be sure, the administrator of the Department of Personnel Administration has authority to make rules for the employment of persons in civil service positions, see G. L. c. 31, § 3, but those rules must be formulated and filed conformably with G. L. c. 30A, § 5. We are of opinion that neither the Department of Personnel Administration nor the Civil Service Commission may impose on a municipality a policy not promulgated and published (see G. L. c. 30A, § 6) as a rule — particularly retroactively. If there is to be a limit on the number of days an intermittent officer may work full time (40 hours a week or more), the towns and cities are entitled to be apprised of such a restriction before the fact so that they may conduct themselves accordingly. They can then, if they see fit, draw staffing plans under which no intermittent employee will work more than forty hours per week.

The curious label the town pinned·on Jones — temporary full-time permanent intermittent — does not lead to the commission's conclusion that there can be no such designation. There appears in the record a portion of the "Municlass Manual," a municipal classification plan for Massachusetts prepared by the administrator and commission. Occupational series code 0083, appearing in that manual pertains to police and contains classification 0083A, "Police Officer." Within that classification, the town manager and the board possessed managerial discretion to write flexible job descriptions in the interests of efficiency. See *Somerville* v. *Somerville Mun. Employees Assn.*, 20 Mass. App. Ct. 594, 600 n.9 (1985).

On the view we have taken of the case, we need not consider other issues raised by the town (e.g., that Jones's claim is barred by laches) and the counterclaim of Jones for back pay.

The judgment is reversed. A new judgment shall enter vacating the order of the Civil Service Commission approving

the order of the personnel administrator correcting the status of Jones to regular full-time police officer as of August 31, 1980.

*So ordered.*