NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1844                                         Appeals Court

    CITY OF WORCESTER  vs.  CIVIL SERVICE COMMISSION & another.[1]


                        No. 12-P-1844.

      Suffolk.    December 6, 2013. - February 26, 2015.


         Present:  Fecteau, Sullivan, & Maldonado, JJ.


Practice, Civil, Review respecting civil service.  Civil
     Service, Police, Decision of Civil Service Commission,
     Termination of employment, Judicial review.  Administrative
     Law, Hearing, Judicial review.  Municipal Corporations,
     Police.  Police, Discharge.  Public Employment, Police,
     Termination.  Statute, Construction.



     Civil action commenced in the Superior Court Department on
October 22, 2010.

     The case was heard by Carol S. Ball, J., on motions for
judgment on the pleadings.


     Leo J. Peloquin for the plaintiff.
     Robert L. Quinan, Jr., Assistant Attorney General, for
Civil Service Commission.
     Meghan C. Cooper for Leon Dykas.


     MALDONADO, J.  The city of Worcester (city) appeals from a

_____

     [1] Leon Dykas.

judgment of the Superior Court upholding the determination of the Civil Service Commission (commission) that an appointing authority may not suspend or terminate a tenured employee for the employee's failure to testify at a hearing pursuant to G. L. c. 31, § 41. The city contends that because § 41 does not explicitly establish a statutory testimonial privilege and because police department rules and regulations require officers to provide truthful testimony when requested, the commission exceeded its authority and improperly intruded upon the city's right to enforce its rules of conduct. We conclude that the commission's determination that, because the § 41 hearing is held for the protection of the tenured employee and not the appointing authority, the tenured employee may not be sanctioned for the employee's failure to testify at his § 41 hearing is consistent with the statutory purpose of § 41 and entitled to substantial deference. Therefore, we affirm.

Factual background. The relevant facts drawn from the administrative record are undisputed. Leon Dykas was a tenured civil service employee, working as a police officer for the Worcester police department (department). In 2008, Dykas was purported to have engaged in noncriminal misconduct involving his ex-wife in violation of a "Last Chance Settlement Agreement"

into which he had entered with the department.[2]  Dykas cooperated

with the department's internal investigation and attended an

investigatory interview at the department's bureau of

professional standards (BOPS) as ordered.  Following review of

the BOPS report and a transcript of Dykas's interview, the chief

of police, Gary Gemme, placed Dykas on paid administrative leave

pending completion of the investigation.

Several months later, on July 2, 2009, Michael V. O'Brien,

the city manager and appointing authority,[3] scheduled a mandatory

pretermination hearing pursuant to G. L. c. 31, § 41 (§ 41

hearing).  O'Brien provided Dykas with the required statutory

notice.  He also ordered Dykas to attend and to testify

truthfully at the § 41 hearing.[4]  The notice warned Dykas that

his failure "to obey this directive in any respect could result

in discipline, up to and including dismissal, separate and apart

---

[2] Under the terms of the agreement, Dykas agreed that the
city would have "just cause to dismiss him" if he engaged in any
further misconduct related to his ex-wife or her friends.

[3] "The term '[a]ppointing authority' is defined as 'any
person, board or commission with power to appoint or employ
personnel in civil service positions.'  G. L. c. 31, § 1."
Fernandes v. Attleboro Hous. Authy., 470 Mass. 117, 123 n.5
(2014).

[4] A police officer is required to "truthfully state facts in
all reports as well as when  . . . appear[ing] before or
participat[ing] in any judicial, Departmental, or other official
investigation, hearing, trial or proceeding.  He shall fully
cooperate in all phases of such investigations, hearings, trials
and proceedings."  Worcester police department, Rules and
Regulations, Regulation 1402.1.

from any discipline imposed as a result of the substantiation of the underlying [misconduct] charge."

Dykas appeared for the commencement of the § 41 hearing with counsel; however, Dykas left before the hearing concluded, failing to supply the requested testimony and leaving his attorney behind. The hearing officer advised that he would draw an adverse inference from Dykas's failure to testify.[5]

For Dykas's failure to comply with the order commanding his testimony, Chief Gemme suspended Dykas for five tours of duty without pay. Dykas appealed this sanction. The city scheduled another § 41 hearing to determine whether Dykas's failure to comply with O'Brien's directive to testify at the § 41 hearing constituted a separate ground for dismissal. The hearing officer determined that Dykas's failure to comply with the order to testify constituted just cause for Dykas's suspension and dismissal. Adopting the hearing officer's report, the city then terminated Dykas for his failure to testify.

Dykas appealed this termination to the commission, which concluded that Dykas could not be compelled to testify at his § 41 hearing. As a result, the commission found that the city lacked just cause to suspend or terminate Dykas on that basis, and it ordered Dykas returned to work without the loss of pay or

---

[5] The parties are in agreement that such an inference is allowable in this context.

benefits.  The city appealed from the commission's decision to a judge of the Superior Court, who affirmed the commission's order.[6]  See G. L. c. 30A, § 14; G. L. c. 31, §§ 43-44.  The city appealed, and we address its challenge below.

Standard of review.  When reviewing the commission's interpretation of the civil service law which it is charged with enforcing, "we must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." Falmouth v. Civil Serv. Commn., 447 Mass. 814, 821-822 (2006), quoting from Massachusetts Fedn. of Teachers, AFT, AFL-CIO v. Board of Educ., 436 Mass. 763, 771 (2002).  We give "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary

---

[6] The parties informed us that after Dykas's termination for refusing to testify, O'Brien separately terminated Dykas for the underlying misconduct and, further, that an arbitrator upheld the discharge.  No issue regarding the second termination is before us.

Even though Dykas's employment has been terminated, the current appeal is not moot because, if he prevails, as the commission observes, he may be "entitled to compensation for the period that intervened between his court-ordered restoration to employment in the present case and his subsequent discharge as a result of the arbitral proceeding."  In addition, even if the dispute were technically moot, it is one that has been fully briefed, is of public importance, and the issue could easily recur.  See, e.g., Libertarian Assn. of Mass. v. Secretary of the Comm., 462 Mass. 538, 548 (2012), and cases cited.

authority conferred upon it."  Brackett v. Civil Serv. Commn.,
447 Mass. 233, 241-242 (2006), quoting from Iodice v.
Architectural Access Bd., 424 Mass. 370, 375-376 (1997).

Statutory scheme.  There is a three-tiered system of review
for tenured employees facing suspension or discharge.  See G. L.
c. 31, §§ 41-44.  Pursuant to this statutory scheme, an
appointing authority may not discharge a tenured employee or
suspend the tenured employee for more than five days except for
just cause; the employee is entitled to an initial hearing
pursuant to § 41.  See Fernandes v. Attleboro Hous. Authy., 470
Mass. 117, 122-123 (2014); School Comm. of Brockton v. Civil
Serv. Commn., 43 Mass. App. Ct. 486, 488 (1997).

In connection with this § 41 proceeding, the tenured
employee is afforded several procedural protections.  These
safeguards include the right to written notice of the action
contemplated by the appointing authority, a copy of G. L. c. 31,
§§ 41-45, and a hearing on whether there is just cause for the
proposed action.  The employee may be represented by counsel, at
his or her election.  If, at the conclusion of the § 41 hearing,
the appointing authority finds just cause for the tenured
employee's termination, the appointing authority must provide
the employee with a written notice of its decision.  The
employee then may avail himself or herself of the two additional
layers of review -- a de novo adjudicatory hearing before the

commission (G. L. c. 31, § 43) and subsequent judicial review of that decision in the Superior Court (G. L. c. 31, § 44). See Falmouth v. Civil Serv. Commn., supra at 823. The appointing authority is also permitted to seek judicial review of the commission's decision.

Testimony at § 41 hearing. The city contends that G. L. c. 31, § 41, as inserted by St. 1978, c. 393, § 4, which provides in relevant part that "[t]he person who requested the hearing shall be allowed to answer, personally or by counsel, any of the charges which have been made against him," does not explicitly confer upon an employee a testimonial privilege and, therefore, that Dykas was required to testify when ordered to do so by his superiors. "Where, as here, a statute is 'simply silent' on the particular issue, we interpret the provision 'in the context of the over-all objective the Legislature sought to accomplish.'" Seller's Case, 452 Mass. 804, 810 (2008), quoting from National Lumber Co. v. LeFrancois Constr. Corp., 430 Mass. 663, 667 (2000).

Before the enactment of civil service laws in the Nineteenth Century, public employees served largely at the will of their employers. See Civil Service Act, St. 1884, c. 320. The civil service laws were enacted in order to protect employees from unjustified removal or suspensions. See Branche v. Fitchburg, 306 Mass. 613, 614 (1940). The civil service

system sought to "assur[e] that all employees are protected against coercion for political purposes, and are protected from arbitrary and capricious actions." Callanan v. Personnel Administrator for the Comm., 400 Mass. 597, 600 (1987), quoting from G. L. c. 31, § 1, fourth par. (f). Viewed in this context, it is apparent that § 41 is intended to protect the tenured employee's interest by restricting, not enlarging, the removal powers of an appointing authority. See Gloucester v. Civil Serv. Commn., 408 Mass. 292, 297 (1990). Section 41 requires that the tenured employee receive notice and an explanation of the charges against him and, towards that end, affords tenured employees substantial procedural protections. That the employee facing discharge may answer to the charges "personally" or "through counsel," see G. L. c. 31 § 41, fourth par., or choose to waive his or her opportunity to be heard, lends further support to the commission's conclusion that the § 41 hearing is geared to the protection of the employee and not the employer. See Fernandes v. Attleboro Hous. Authy., supra at 123 ("[T]he provisions of G. L. c. 31, §§ 41-45, clearly are meant to protect tenured employees' rights"). See generally Whitney v. Judge of the Dist. Ct. of N. Berkshire, 271 Mass. 448, 461 (1930). Certain protections for tenured civil service employees have been extant in the statute for over 100 years. See St. 1904, c. 314, § 2, as amended by St. 1905, c. 243, § 1. See

also Tucker v. Boston, 223 Mass. 478, 480 (1916) (employee may not be terminated "unless and until he has had an opportunity to be heard, and that right to such hearing is a condition precedent to such removal").

The current iteration of the statute, last amended in 1978, must also be understood in the context of modern constitutional jurisprudence. Tenured civil servants such as Dykas have a property interest in their employment, see Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576-578 (1972), and must be afforded basic due process protections in suspension and disciplinary proceedings, including a predeprivation hearing. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-546 (1985); Cronin v. Amesbury, 81 F.3d 257, 260 n.2 (1st Cir. 1996). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." Cleveland Bd. of Educ. v. Loudermill, supra at 546. This fundamental right to be heard belongs to the employee, not the employer.[7] Ibid. Accord Tucker v. Boston, supra. The city argues that the commission's ruling nevertheless deprived it of an opportunity to conduct a "full"

---

[7] Contrary to the city's assertion, the fact that an employee is not entitled to a hearing before a disinterested hearing officer in lieu of the appointing authority without the appointing authority's consent (see G. L. c. 31, § 41A), does not detract from the overarching legislative intent to protect the interest of the employee.

hearing, as required by § 41.  See G. L. c. 31, § 41 ("[S]uch employee . . . shall be given a full hearing concerning [the] reason or reasons before the appointing authority").  The city confounds the hearing's purpose.  The statute requires a "full" hearing so that the employee may be provided with the "reasons or reasons" for his termination -- to which he is entitled.  See Cleveland Bd. of Educ. v. Loudermill, supra.  It is not intended to provide the appointing authority with an additional investigative venue once the decision to terminate employment or to sanction the employee has been made.

The city has an opportunity, within statutory and constitutional limits, to collect evidence and develop its case via its internal departmental investigations.  Once, however, the decision to seek termination was made, Dykas's statutory and due process rights attached.  Constitutional safeguards require "oral or written notice of the charges against [the tenured employee], an explanation of the employer's evidence, and an opportunity to present [the employee's] side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 546.  See Murray v. Second Dist. Ct. of E. Middlesex, 389 Mass. 508, 516 (1983) ("[D]ecision of the commission is not justified if it is not based on the reasons specified in the charges brought by the appointing authority").

The commission was also reasonable in its determination

that department rules and regulations could not serve to undermine the statute's purpose.[8]  See Maimaron v. Commonwealth, 449 Mass. 167, 174-175 (2007) (where State police regulation conflicts with statute, statute governs); Massachusetts Org. of State Engrs. & Scientists v. Commissioner of Admin., 29 Mass. App. Ct. 916, 918 (1990) ("[R]equirements [of c. 31] may not be altered on the appointing authority's own motion or through collective bargaining or arbitration").  In addition, the commission's ruling did not intrude upon the city's management rights.  The rule here did not implicate a discretionary employment decision based upon merit, a policy consideration, or any mitigating factors.  Contrast Cambridge v. Civil Serv. Commn., 43 Mass. App. Ct. 300, 305-306 (1997) (vacating commission's decision due to commission's substituted judgment and affirming bypass decision of appointing authority); Boston Police Dept. v. Collins, 48 Mass. App. Ct. 408, 413 (2000) (affirming Superior Court judgment reinstating five-day suspension imposed by employer that had been vacated by commission).

Moreover, the commission did not create a testimonial privilege for which the Legislature had not provided.  Unlike a

---

[8] The commission's ruling in this case did not foreclose the city from enforcing its rules of conduct had Dykas elected to testify.  He still would have been subject to the rule requiring that his testimony be truthful.

true testimonial privilege, the commission's ruling did not preclude the city from drawing an adverse inference against Dykas for failing to testify. Nor did the commission's ruling preclude the commission from considering such negative inference on appeal. See Falmouth v. Civil Service. Commn., 447 Mass at 826-827. The commission is afforded "considerable leeway" in interpreting the statute, and consistent with this authority, the commission simply decided a legal question pertaining to what, if any, obligation Dykas had to testify at his § 41 hearing. Id. at 821. The commission did not exceed its authority. Accordingly, we conclude that the commission's determination that the city did not have just cause to suspend or terminate Dykas for failing to testify at his G. L. c. 31, § 41, hearing is not arbitrary, capricious, or otherwise contrary to the law.[9]

The judgment of the Superior Court is affirmed.[10]

So ordered.

---

[9] The commission did not reach, and we do not address, the additional advisory question of whether an employee may testify at his § 41 hearing through counsel.

[10] This affirmance has no effect on the second discharge, which is not before us. See note 6, supra.