RALPH vs. CIVIL SERVICE COMMISSION, 100 Mass. App. Ct. 199

 
 THOMAS V. RALPH vs. CIVIL SERVICE COMMISSION & another. [Note 1]

100 Mass. App. Ct. 199
 April 5, 2021 - September 8, 2021

Court Below: Superior Court, Worcester County
Present: Ditkoff, Singh, & Englander, JJ.

 

Civil Service, Police, Promotion, Decision of Civil Service Commission. Police, Promotional examination, Special police officer. Police Officer. Municipal Corporations, Police. Practice, Civil, Review respecting civil service.

Discussion of the standard of review of a decision of the Civil Service Commission. [202-204]

A police officer's prior experience as an auxiliary police officer and as a special police officer did not qualify him for additional points on a promotional examination for twenty-five years of service under G. L. c. 31, § 59, where, read as a whole, the statutory phrase "member of a regular police force" referred to a person's status as a regular police officer, rather than, for example, a reserve, intermittent, or call officer, and the plaintiff police officer's long service neither as an auxiliary police officer nor as a special police officer could be considered service as a member of a regular police force (in that the role of an auxiliary police officer was to serve only when needed to fill a need that could not be handled by the regular or reserve police force, and in that the plaintiff's service as a special police officer was not as a regular employee, but on a part-time, occasional, or as-needed basis akin to a reserve, intermittent, or call officer). [204-209]

A police officer's prior experience as an acting lieutenant for a municipal auxiliary police force did not qualify him for credit under G. L. c. 31, § 22, on a promotional examination for municipal police lieutenant. [209]

CIVIL ACTION commenced in the Superior Court Department on March 18, 2019.

 The case was heard by Daniel M. Wrenn, J., on motions for judgment on the pleadings.

 Thomas V. Ralph, pro se.

 Douglas S. Martland, Assistant Attorney General, for the defendants.

 DITKOFF, J. Webster Police Sergeant Thomas V. Ralph appeals from a judgment of the Superior Court affirming the decision of

 Page 200 

 the Civil Service Commission (commission) disallowing Sergeant Ralph additional points on a promotional examination for twenty-five years of service under G. L. c. 31, § 59, and additional points for previous experience in the position sought under G. L. c. 31, § 22. The commission concluded that Sergeant Ralph's prior experience as an auxiliary police officer and as a special police officer did not qualify for either preference. Agreeing with this interpretation of the two statutes, we affirm.

 1. Background. a. Sergeant Ralph's background and experience. From November 1988 to June 1996, Ralph served as an auxiliary officer for the Dedham auxiliary police, working an average of sixteen to twenty hours per week. In this position, his duties included "assisting the Regular Police Officers with traffic and crowd control at town events . . . . He also performed traffic duties at various church gatherings, and conducted weekend patrol duties of town buildings and property, when requested by the Regular Police." He was authorized to perform paid details when requested. From January 1994 to July 1995, he served as an acting lieutenant in the Dedham auxiliary police. In this role, he supervised and trained other auxiliary police officers, "performed traffic and crowd control at public events and church gatherings," and "conducted weekend patrols of town buildings and property." 

 Concurrent with his service as a Dedham auxiliary police officer, Ralph served in several other law enforcement roles. From May 1989 through February 1992, he served as a part-time police officer in the Suffolk University police department, working sixteen or more hours per week. From July 1990 through June 1996, Ralph worked as an auxiliary police officer and a special police officer for the Medfield police department, working eight hours per week. [Note 2] From March 1992 through March 1993, he served as a full-time campus police officer at the University of Massachusetts in Lowell. From September 1994 through March 1996, he served as a full-time police officer for Suffolk University. [Note 3]

 On December 12, 1995, Ralph became a permanent intermittent police officer for the Webster police department, working sixteen shifts in that capacity. On March 30, 1996, he became a

 Page 201 

 full-time police officer in Webster. In August 1999, he was promoted to sergeant and retained that position at the time of his appeal of the commission's decision.

 b. The promotional examinations. For municipalities that have adopted the civil service regime, promotions are guided by civil service promotional examinations. Sergeant Ralph participated in four such civil service promotional examinations. In March 2017, he took the examination for Dracut police chief. In February and March 2017, he took the examination for Oxford police chief. In September 2017, he took the examination for Webster police lieutenant. In September 2018, he took the examination for Webster police chief.

 c. The promotional preferences. There are various adjustments available to an examination score based on an applicant's experience or other circumstances. Sergeant Ralph claimed two different experience credits. The first was a twenty-five year promotional preference set out in G. L. c. 31, § 59. General Laws c. 31, § 59, provides, "Notwithstanding the provisions of any law or rule to the contrary, a member of a regular police force . . . who has served as such for twenty-five years and who passes an examination for promotional appointment in such force shall have preference in promotion equal to that provided to veterans under the civil service rules." Because he had not worked for the Webster police department for twenty-five years at the time of the examinations, [Note 4] Sergeant Ralph proposed including his service as an auxiliary police officer for Dedham, as an auxiliary and special police officer for Medfield, and as a full-time police officer at the University of Massachusetts in Lowell to put him over the twenty-five year threshold.

 The second preference that Sergeant Ralph requested was pursuant to G. L. c. 31, § 22, for his time spent serving as an acting lieutenant of the Dedham auxiliary police from January 1994 to July 1995. This request applied only to the promotional 

 Page 202 

examination for the position of Webster police lieutenant. General Laws c. 31, § 22, provides, "In any competitive examination, an applicant shall be given credit for employment or experience in the position for which the examination is held."

 d. Procedural history. The Human Resources Division (division) denied Sergeant Ralph both promotional preferences. The division stated that "[o]nly municipal Police Officer and higher ranks count toward the" twenty-five year preference, and that neither auxiliary experience nor experience as a university police officer counted.

 Sergeant Ralph appealed the division's decision to the commission, and the commission granted the division's motion to dismiss the appeal. The commission agreed with the division's reasoning that G. L. c. 31, § 59, applied only to "'regular' officers who have accrued 25 years of service as 'regular' officers," which did not include auxiliary, special, or university police officers. The commission recognized that the division had previously allowed credit under G. L. c. 31, § 22, for service as an auxiliary officer, but concluded that Sergeant Ralph's duties supervising auxiliary police officers on crowd control and weekend patrols were not comparable to the role of a regular police lieutenant.

 Sergeant Ralph sought judicial review of the commission's decision in the Superior Court pursuant to G. L. c. 31, § 44, and a Superior Court judge allowed the commission's cross motion for judgment on the pleadings, denying Sergeant Ralph's motion for judgment on the pleadings. This appeal followed.

 2. Standard of review. "Like the Superior Court, we review the commission's decision under G. L. c. 31, § 44." Boston Police Dep't v. Civil Serv. Comm'n, 483 Mass. 461, 469 (2019). "We may set aside the commission's decision only if '"the substantial rights of any party may have been prejudiced" [because the commission decision] is based on an error of law, unsupported by substantial evidence, or otherwise not in accordance with the law.'" Spencer v. Civil Serv. Comm'n, 479 Mass. 210, 215 (2018), quoting Police Dep't of Boston v. Kavaleski, 463 Mass. 680, 689 (2012) (Kavaleski). The appellant "bears a heavy burden because 'we give "due weight to the experience, technical competence, and specialized knowledge of the commission."'" Spencer, supra, quoting Kavaleski, supra.

 Here, the commission allowed the division's motion to dismiss the appeal. A dismissal by an agency after the petitioner's presentation is not akin to a dismissal of a civil complaint pursuant 

 Page 203 

to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). See Spencer, 479 Mass. at 215 n.5 ("Motions to dismiss before the commission differ somewhat from such motions under Massachusetts Rules of Civil Procedure"). Rather, 801 Code Mass. Regs. § 1.01(7)(g)(1) (1998) states, "Upon completion by the Petitioner of the presentation of his evidence, the Respondent may move to dismiss on the ground that upon the evidence, or the law, or both, the Petitioner has not established his case. The Presiding Officer may act upon the dismissal motion when presented, or during a stay or continuance of proceedings, or may wait until the close of all the evidence." This dismissal procedure allows the commission to relieve the division of the burden of presenting an affirmative case when, at the close of the petitioner's case, the commission determines that the petitioner has not met his burden. It is akin to the procedure set forth in the second and third sentences of Mass. R. Civ. P. 41 (b) (2), 365 Mass. 803 (1974) ("After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence"). See Mattoon v. Pittsfield, 56 Mass. App. Ct. 124, 139 (2002).

 Although the division styled its motion as a motion to dismiss under 801 Code Mass. Regs. § 1.01(7)(g)(1), it briefed the matter as a motion for a summary decision under 801 Code Mass. Regs. § 1.01(7)(h) (1998). Under that provision, "[w]hen a party is of the opinion there is no genuine issue of fact relating to all or part of a claim or defense and he is entitled to prevail as a matter of law, the Party may move, with or without supporting affidavits, for summary decision on the claim or defense." 801 Code Mass. Regs. § 1.01(7)(h). A summary decision, therefore, is appropriate whenever "there was no issue of material fact for which a hearing was required." Kobrin v. Board of Registration in Med., 444 Mass. 837, 848 (2005). It is unsettled how much deference we owe to an agency's summary decision or determination that no genuine issue of fact exists. See Thomann v. Board of Registration of Real Estate Brokers & Salesmen, 481 Mass. 1006, 1009 (2018). In any event, the questions here are controlled by a proper understanding of the statutes involved, regardless of the standard

 Page 204 

 of review.

 3. General Laws c. 31, § 59. a. Statutory interpretation. General Laws c. 31, § 59, provides, "Notwithstanding the provisions of any law or rule to the contrary, a member of a regular police force . . . who has served as such for twenty-five years and who passes an examination for promotional appointment in such force shall have preference in promotion equal to that provided to veterans under the civil service rules." "Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'" Spencer, 479 Mass. at 216, quoting Campatelli v. Chief Justice of the Trial Court, 468 Mass. 455, 464 (2014). "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent." Abuzahra v. Cambridge, 486 Mass. 818, 822 (2021), quoting Ryan v. Mary Ann Morse Healthcare Corp., 483 Mass. 612, 620 (2019). "[W]here the statutory language is ambiguous or unclear, 'we consider the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, [such that] the purpose of its framers may be effectuated.'" Abuzahra, supra, quoting Spencer, supra at 217.

 "When reviewing the commission's interpretation of the civil service law that it is charged with enforcing, 'we must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.'" Worcester v. Civil Serv. Comm'n, 87 Mass. App. Ct. 120, 122 (2015), quoting Falmouth v. Civil Serv. Comm'n, 447 Mass. 814, 821-822 (2006). Nonetheless, "[a]n incorrect interpretation of a statute . . . is not entitled to deference." Spencer, 479 Mass. at 216, quoting Kszepka's Case, 408 Mass. 843, 847 (1990).

 Although, prior to his appointment as permanent police officer in Webster, Sergeant Ralph was not a regular police officer, he was an employee of a regular police force, both as an auxiliary police officer and as a special police officer. Thus, Sergeant Ralph reasons, he was a "member" of a "regular police force," by being an employee of a police department. Essentially, Sergeant Ralph proposes to read the word "member" in isolation from the phrase "regular police force." This interpretation raises the obvious problem that it would count service as a civilian employee of a police department, but Sergeant Ralph proposes to handle this difficulty by construing the word "member" to mean "sworn officer."

 Page 205 

 These mental gymnastics become unnecessary, however, if we consider the phrase "member of a regular police force" as a whole, rather than consider the individual words in isolation. See Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 605 (2019) ("Even clear statutory language is not read in isolation"). Furthermore, this construction is required by the rest of the statute. See GGNSC Admin. Servs., LLC v. Schrader, 484 Mass. 181, 187 (2020) ("We consider the plain language of the section at issue by analyzing the statute as a whole"). The same statute refers to "members of the reserve or intermittent police or fire force" and to "members of the call fire force." G. L. c. 31, § 59, third par. Under Sergeant Ralph's interpretation, these phrases are essentially meaningless where reserve, intermittent, or call officers are employed by the police department or fire department. If, however, we read these phrases as a whole, it is easy to discern that the Legislature considered "member of a regular police force" as referring to a person's status as a regular police officer, rather than, for example, a reserve, intermittent, or call officer. See Lawrence v. Civil Serv. Comm'n, 66 Mass. App. Ct. 309, 313 (2006) ("In the first sentence of the third paragraph of § 59 . . . , the Legislature has provided a means by which police officers who are not on the regular force, but are instead on either the reserve or intermittent police forces, may be included on the list" [emphasis added]). Accord Cobble Hill Ctr. LLC v. Somerville Redev. Auth., 487 Mass. 249, 255 (2021), quoting Plymouth Retirement Bd., supra (court reads "the statutory scheme as a whole, so as to produce an internal consistency within the statute"). [Note 5] Accordingly, the proper question is whether Sergeant Ralph's prior service was regular police officer service or more akin to a reserve, intermittent, or call officer.

 b. Auxiliary police officer. With this understanding, it is evident that Sergeant Ralph's long service as an auxiliary police officer was not service as a member of a regular police force. The Massachusetts Civil Defense Act of 1950 (act) provided for the establishment of an auxiliary police force. See St. 1950, c. 639, § 11 (a) ("The mayor and city council in cities and the selectmen in towns . . . may appoint, train and equip volunteer, unpaid 

 Page 206 

auxiliary firemen and auxiliary police and may establish and equip such other volunteer, unpaid public protection units as may be approved by said civil defense agency and may appoint and train their members"). Section 11 (c) of the act states, "Persons appointed to the auxiliary police force in a city or town shall exercise or perform such of the powers or duties of police officers as may be prescribed by the appointing authority; provided, that said powers or duties shall not be exercised or performed by them except while they are on active duty . . . after being called to such duty by the head of the police force of such city or town to meet a situation which, in his opinion, cannot be adequately handled by the regular police force and by the reserve police force, if any, of such city or town" (emphasis added). The role of auxiliary police officers is to serve only when needed to fill a need that cannot be handled by the regular or reserve police force. Accordingly, auxiliary police officers are akin to reserve, intermittent, or call officers and are not members of a regular police force within the meaning of G. L. c. 31, § 59. Contrast DaLuz v. Department of Correction, 434 Mass. 40, 49-50 (2001) (where statute did not "distinguish between total and partial workers' compensation benefits," plain language of statute did not permit "reduction of assault pay benefits for partial disability status" for correction officers).

 c. Special police officer. By contrast, the role of special police officer is not well defined by statute [Note 6] or case law. Most discussions of special police officers involve police officers for educational

 Page 207 

 institutions or hospitals, generally appointed by the colonel of the State police department under G. L. c. 22C, § 63. See, e.g., Commonwealth v. Smeaton, 465 Mass. 752, 756 (2013); Harvard Crimson, Inc. v. Presidents & Fellows of Harvard College, 445 Mass. 745, 752 (2006); Young v. Boston Univ., 64 Mass. App. Ct. 586, 588 (2005), cert. denied, 549 U.S. 832 (2006). See also Zygmuntowicz v. American Steel & Wire Co. of N.J., 240 Mass. 421, 425 (1922) (watchmen appointed as special police officers); Armstrong v. Stair, 217 Mass. 534, 535-536 (1914) (St. 1898, c. 282, allowed appointment of special police officers in Boston at request of corporations or persons to serve in particular "park, public ground, place of amusement, place of public worship, wharf, manufactory or other locality"). We also see discussions of full-time police officers who have been appointed special police officers in other jurisdictions under G. L. c. 41, § 99, allowing them to exercise police powers outside their home jurisdictions. See, e.g., Commonwealth v. Callahan, 428 Mass. 335, 336 (1998); Commonwealth v. Nicholson, 56 Mass. App. Ct. 921, 922 (2002).

 Nonetheless, it is evident that there is a third type of special police officer, appointed by municipalities directly. One such employment is described in Jones v. Wayland, 374 Mass. 249, 251-252 (1978), in which the town of Wayland appointed a special police officer who was paid by the day and whose duties included "cruiser patrol, traffic direction, and appearance in court for the purpose of giving testimony." Another is described in Maynard v. Director of Div. of Employment Sec., 397 Mass. 1005, 1005 (1986), in which the town of Maynard appointed a part-time special police officer "on an 'on-call as needed' basis." Yet another is described in Politano v. Selectmen of Nahant, 12 Mass. App. Ct. 738, 741 (1981), in which the special police officer "worked only intermittently," at least on one occasion keeping order at a bar. Similarly, in Ware v. Hardwick, 67 Mass. App. Ct. 325, 326, 334 (2006), we described "a part-time police officer" as a "special police officer." See also Prenaveau v. Prenaveau, 75 Mass. App. Ct. 131, 134 (2009) (mentioning that Stoughton special police officer decided to "pursue law enforcement full time" by "appl[ying] to be a New Hampshire State trooper"); Yeagle v. Aetna Cas. & Sur. Co., 42 Mass. App. Ct. 650, 650 (1997) (mentioning that Wellesley special

 Page 208 

 police officer "claimed to have lost part-time assignments"). The common thread in these cases is that the special police officer served, not as a regular employee, but on a part-time, occasional, or as-needed basis. Such a special police officer, like an auxiliary police officer, is akin to a reserve, intermittent, or call officer and is not a member of a regular police force within the meaning of G. L. c. 31, § 59.

 Here, it is evident from the record that Sergeant Ralph served as the third type of special police officer when he worked for Medfield. Medfield reported that he "was appointed as an Auxiliary Police Officer and a Special Police Officer," and Sergeant Ralph reported that he worked eight hours per week for Medfield, at a time when he was serving several other towns and institutions as a special or auxiliary police officer. As this type of special police officer is not a member of a regular police force, Sergeant Ralph's service for Medfield could not count under G. L. c. 31, § 59.

 We find support for our conclusion in Jones v. Wayland, 374 Mass. 249 (1978). There the Supreme Judicial Court determined that a special police officer was eligible for police disability payments under G. L. c. 41, § 111F. See Jones, supra at 257. The court pointed out that the term "police officer" in that statute was not "qualified by antecedents such as, inter alia, 'regular,' 'permanent,' and 'full-time,'" and thus a special police officer was eligible for § 111F benefits. Jones, supra at 256. In so doing, the court contemplated that a special police officer is not a regular police officer. See id. at 256-257.

 Politano, 12 Mass. App. Ct. at 742-743, is not to the contrary. There, we considered the same statute as was considered in Jones, G. L. c. 41, § 111F, and reaffirmed that the term "police officer" included a special police officer under the statute. Politano, supra. This was because, as discussed in Jones, the statute did not include any restrictive language preceding the term "police officer." Jones, 374 Mass. at 256-257. [Note 7] Although we accept that Sergeant Ralph served as a police officer prior to his appointment by Webster, this

 Page 209 

 sheds no light on whether he served as a member of a "regular police force." The administrative record establishes that, under a proper understanding of G. L. c. 31, § 59, Sergeant Ralph did not have twenty-five years of experience as a member of a regular police force at the time of the examinations. [Note 8]

 4. General Laws c. 31, § 22. General Laws c. 31, § 22, provides, "In any competitive examination, an applicant shall be given credit for employment or experience in the position for which the examination is held." Sergeant Ralph sought to receive credit under this statute for the promotional examination for the position of Webster police lieutenant, pointing to his time as an acting lieutenant for the Dedham auxiliary police. Looking to our discussion supra, as defined by the act, St. 1950, c. 639, § 11 (c), the role of an auxiliary police officer and the role of a regular police officer are separate and distinct. It follows, then, that Sergeant Ralph's position as an acting lieutenant for an auxiliary police force is not "employment or experience in the position for which the examination [was] held," lieutenant of a regular police force. G. L. c. 31, § 22. As a matter of law, this position does not qualify for credit in the examination for Webster police lieutenant under the statute. [Note 9]

 Page 205 

 5. Conclusion. As the record before the commission demonstrated that Sergeant Ralph could not establish his entitlement to the promotional preferences under either G. L. c. 31, § 59, or G. L. c. 31, § 22, the commission properly issued a summary decision in favor of the division. Accordingly, the Superior Court's judgment affirming the commission's decision is affirmed.

So ordered.

FOOTNOTES
[Note 1] Human Resources Division. 

[Note 2] There is no information in the record detailing what his duties were in this position. 

[Note 3] As with his position as a special and auxiliary police officer in Medfield, there is no information in the record detailing his duties as a university police officer. 

[Note 4] It is evident that Sergeant Ralph now has twenty-five years of service as a full-time officer with that department. No party argues that this matter is moot, and it has not been demonstrated to us that it is impossible for adjustments to the 2017 and 2018 examination results to be relevant to some future hiring decision. See Doe v. Superintendent of Schs. of Worcester, 421 Mass. 117, 123 (1995) (controversy not moot where, inter alia, defendants failed to show plaintiff had been adequately compensated). Cf. Styller v. Zoning Bd. of Appeals of Lynnfield, 487 Mass. 588, 595 (2021), quoting Rosado v. Wyman, 397 U.S. 397, 403 (1970) ("Unlike standing, 'mootness [is] a factor affecting [the court's] discretion, not its power,' to decide a case"). 

[Note 5] This construction also has the advantage of being consistent with the use of the phrase in other statutes. See G. L. c. 31, § 48 (stating that persons "doing intermittent work protecting school children going to and from schools" are "not members of the regular police force"); G. L. c. 41, §§ 111A, 111D, 111L (discussing vacation time for members of regular police force). 

[Note 6] The term "special police officer" appears nine times in the General Laws. Most of the references provide that special police officers may enforce certain laws. See G. L. c. 64C, § 8 (special police officer may make warrantless arrest for violation of laws regarding cigarette sales); G. L. c. 138, § 34B (special police officer may conduct warrantless arrest of person violating liquor purchase identification law); G. L. c. 140, § 174E (h) (special State police officer may enforce laws against excessive dog tethering); G. L. c. 270, § 18 (special police officer may make warrantless arrest of person using, possessing, or selling toxic vapors for intoxication); G. L. c. 272, § 88 (warrant may authorize special State police officer to arrest persons engaged in animal fighting); G. L. c. 272, § 89 (special State police officer may make warrantless entry and arrest to enforce laws against animal fighting). One reference informs us, by implication, that special police officers may perform paid details for contractors. See G. L. c. 152, § 1 (4) (for purposes of workers' compensation, a special police officer "employed by a contractor for the purpose of directing or maintaining traffic or other similar purposes . . . shall be conclusively presumed to be an employee of such contractor while so employed and paid"). Another reference authorizes the defunct death penalty for the murder of a special police officer. See G. L. c. 279, § 69. And one tantalizing reference informs us that only residents of the Commonwealth may be appointed "special police officers . . . for quelling a riot or disturbance or for protecting property," except that regular employees of the property owner may be appointed. G. L. c. 149, § 176. 

[Note 7] The Supreme Judicial Court's decision in Plymouth Retirement Bd., 483 Mass. 600, and our decision in Selectmen of Oxford v. Civil Serv. Comm'n, 37 Mass. App. Ct. 587 (1994), do not compel a different result. In Plymouth Retirement Bd., the Supreme Judicial Court determined that a police officer must remit payments to the retirement board under G. L. c. 32, § 4 (2), to obtain credit for prior service as a permanent-intermittent police officer. Plymouth Retirement Bd., supra at 601-602. Obviously, just as the treatment of special police officers for retirement purposes does not control how special police officers are treated for promotional preferences, the treatment of special police officers for promotional preferences does not control how special police officers are treated for retirement purposes. In Selectmen of Oxford, we grappled with the baffling question whether there can be such a thing as a "temporary full-time permanent intermittent police officer," concluded there could be, and mentioned G. L. c. 31, § 59, only to note that it did not forbid such a creature. Selectmen of Oxford, supra at 587, 590. Neither decision sheds any light on the question before us. 

[Note 8] In light of our decision regarding Sergeant Ralph's service as an auxiliary and special police officer, we need not decide whether service as the first type of special police officer, such as Sergeant Ralph's service as a university police officer, should be deemed service as a "member of a regular police force." Sergeant Ralph did not argue before the commission that his service for Suffolk University counted as such, possibly based on DeFrancesco v. Human Resources Div., 21 Mass. Civ. Serv. Rep. 662 (2008), and he agreed both before the commission and at oral argument that credit for his service for the University of Massachusetts alone would not suffice to put him over the twenty-five year threshold at the time of the examinations. Accordingly, we express no opinion on this question. 

[Note 9] It is of no matter that the division granted him credit for this service on examinations in 2005 and 2012. See Leopoldstadt, Inc. v. Commissioner of the Div. of Health Care Fin. & Policy, 436 Mass. 80, 86 n.9 (2002) ("The plaintiffs incorrectly assert that the division is required to abide by past agency interpretations of the relevant statutes"); National Labor Relations Bd. v. Local Union 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 434 U.S. 335, 351 (1978) ("An administrative agency is not disqualified from changing its mind; and when it does, the courts still sit in review of the administrative decision and should not approach the statutory construction issue de novo and without regard to the administrative understanding of the statutes"). See also Doris v. Police Comm'r of Boston, 374 Mass. 443, 449 (1978) ("The public interest in the enforcement of the laws of the Commonwealth cannot be defeated by failures of public officials to perform their duties"); Burlington v. Labor Relations Comm'n, 12 Mass. App. Ct. 184, 186 (1981) ("In contending that the town has a duty to administer a particular law irrespective of a past history of nonenforcement, the town is on reasonably well-established ground"). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.