NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-634

CARE AND PROTECTION OF RAVENNA (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from a judgment issued by a Juvenile Court judge finding her unfit and granting permanent custody of the children to the Department of Children and Families (DCF). We conclude that the trial judge did not err in finding a sufficient nexus between the mother's substance use and harm to the children or in relying on DCF reports documenting material witness statements.  Further concluding that the trial judge acted within his discretion in denying the mother's request for a continuance and the motion judge properly found that she received effective assistance of counsel, we affirm.[2]

_____

[1] Care and protection of Efron.  The children's names are pseudonyms.  The father was not present at trial as his whereabouts are unknown, and he is not a party to this appeal.

[2] We are unpersuaded that the mother's appeal is moot.  In light of the possible admissibility of the findings under review in a later care and protection or termination trial held after

1.  Background.  DCF first entered the family's lives in March 2017, when the children were nine and three years old, after a domestic violence incident involving the mother and her then boyfriend.  Although neither child witnessed this incident, the children witnessed the couple's further fighting because the mother continued her relationship with the boyfriend.

In March 2018, the mother was arrested after she assaulted the boyfriend while intoxicated.  At one point during the fight, the mother's boyfriend woke the older child, who was ten at the time, in an attempt to calm down the mother.  This child later explained to DCF that the couple "fight a lot because of their drinking" and that they drink "a lot."  She stated that she had not previously disclosed these fights because the mother hit her across the face and told her that if she "talk[s] about what happens at home," she would be "taken away."  The mother denied that alcohol was an issue in her relationship and opposed DCF's decision to ask the boyfriend not to live with the family.  DCF closed the family's case in November 2018.

our decision, Adoption of Darla, 56 Mass. App. Ct. 519, 521 (2002), it has not been demonstrated to us that the instant judgment would not affect the mother in the future.  See Ralph v. Civil Serv. Comm'n, 100 Mass. App. Ct. 199, 201 n.4 (2021). Cf. Styller v. Zoning Bd. of Appeals of Lynnfield, 487 Mass. 588, 595 (2021), quoting Rosado v. Wyman, 397 U.S. 397, 403 (1970) ("Unlike standing, 'mootness [is] a factor affecting [the court's] discretion, not its power,' to decide a case").

In November 2019, when in New York City, the mother slapped the older child while intoxicated after the child raised her concern about the mother's drinking during an argument. Local police separated the children from the mother, requiring the mother's boyfriend to transport them back to Massachusetts without her. The mother stated that she "accidentally grazed" the older child and that this was because "the kids had been behaving awfully and that they and [her boyfriend] ganged up on her and 'ma[d]e her act like this.'" The mother ended her relationship with her boyfriend after the incident and began participating in a sobriety program.

On July 4, 2021, the mother got drunk and became embroiled in a conflict with house guests. She then instructed the older child to arrange a ride for herself and her younger sibling to their maternal aunt's house, purportedly so that they would not be present for mother's fight with her guests. Although the older child managed to secure a ride to her maternal aunt's home in accordance with a family safety plan, the mother did not notify the aunt that the children were coming. The older child told a DCF investigator that her mother had physically abused her in the past, including by hitting her, spitting on her, and grabbing her neck, and that she had not told anyone before about the abuse because she was not allowed to talk to DCF or others alone. The mother had told the older child that "she is a

3

burden and that she wished she never had kids."  The younger child told a DCF investigator that the mother "grabs him by the arm and squeezes" when she is mad at him, and he sometimes does not feel safe her with her.  For her part, the mother "said that drinking is not an issue and that the kids want to control what she does just like her sister."  She stated that the children's behavior was the issue, not her own behavior.  On July 26, 2021, DCF sought and obtained emergency custody of the children, continuing their placement with the maternal aunt.

In August 2021, DCF provided the mother with an action plan that required her, among other tasks, to complete a neuropsychological evaluation and to engage in individual therapy and substance use treatment, including screening tests. The mother never completed the required neuropsychological evaluation.  She claimed it was unnecessary because she does not "have brain damage."  In October 2021, the mother completed a parenting class but refused DCF's request that she complete an additional class.  The mother did not participate in individual therapy between December 2021 and her trial in October 2022. Although she claims she was diagnosed with chronic posttraumatic stress disorder (CPTSD), the mother was not taking any medication to treat the disorder and has generally not taken any medication for her mental health since 2016, as she claimed that the medication did not help her.  From April to July 2022, the

4

mother missed six drug screening tests and tested positive for methamphetamines five times. The mother was referred to the Institute of Recovering Health but her brief engagement with the service terminated because she denied all substance use.

After a trial in October 2022, a Juvenile Court judge found that the mother was unfit and granted DCF permanent custody of the children. In November 2023, the mother filed a motion for a new trial on the ground of ineffective of assistance of counsel. A different Juvenile Court judge held an evidentiary hearing and then, in December 2023, denied the motion. This appeal, of both the October 2022 judgment and the denial of the motion for a new trial, followed.

2. Reliance on reports. "In care and protection cases, the judge's subsidiary findings must be proved by a preponderance of the evidence and will only be disturbed if clearly erroneous." Care & Protection of Vick, 89 Mass. App. Ct. 704, 706 (2016). "[F]irst- and second-level hearsay contained within DCF reports and official DCF records is admissible for statements of primary fact, so long as the hearsay source is specifically identified in the document and is available for cross-examination, should the party challenging the evidence request to do so" (footnotes omitted). Adoption of Luc, 484 Mass. 139, 153 (2020). Specifically, a judge may "rely on statements of fact contained in [G. L. c. 119, §] 51B

5

reports, as those records are admissible as 'required government report[s].'" Adoption of Querida, 94 Mass. App. Ct. 771, 778 (2019), quoting Custody of Michel, 28 Mass. App. Ct. 260, 267 (1990). See Mass. G. Evid. § 1115(b)(2)(B) (2024). "We give substantial deference to 'the judge's assessment of the weight of the evidence and the credibility of the witnesses.'" Adoption of Querida, supra, quoting Adoption of Quentin, 424 Mass. 882, 886 (1997).

Here, the trial judge, quoting Custody of Michel, 28 Mass. App. Ct. at 267, specifically stated that G. L. c. 119, § 51A, reports were admitted "solely 'to set the stage,'" and that § 51B reports "were considered by the Court 'for statements of fact . . . and not for the purposes of diagnosis, prognosis, and evaluation.'" The judge further credited the statements made by the children, pursuant to Adoption of Luc. In doing so, the trial judge properly followed the case law.

The mother's reliance on Adoption of Rhona, 57 Mass. App. Ct. 479, 484-488 (2003), is misplaced. Unlike in that case, the judge here did not resort to "speculation" to conclude that the mother had repeatedly abused the children. See id. at 485. Rather, the judge properly relied on statements made directly to a DCF investigator by the mother, children, and identifiable witnesses, which (once credited by the judge) established the mother's abuse.

6

3. Nexus of unfitness and substance use. "Evidence of alcohol or drug abuse is . . . relevant to a parent's willingness, competence, and availability to provide care." Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008). A parent's substance use disorder, however, is not sufficient to justify a finding of parental unfitness "[w]ithout a showing that the mother's drug and alcohol use rendered her unable to provide minimally acceptable care for her child." Adoption of Zoltan, 71 Mass. App. Ct. 185, 191 (2008).

Here, the evidence showed that the mother's problems with substance use negatively impacted her children. Nearly every incident triggering a DCF response between March 2017 and July 2021 involved the mother's use of alcohol. As early as 2018, the children informed DCF that the mother and her then boyfriend would fight when they drank alcohol. The children frequently became involved in these fights, and, in one instance, the mother slapped the older child when she raised concerns about the mother's alcohol use during a family argument. Despite the children's and DCF's concerns, the mother has steadfastly refused to engage in meaningful treatment and categorized proposed changes to her alcohol use as attempts to control her. See Adoption of Luc, 484 Mass. at 147 ("the parent's willingness to engage in treatment is an important consideration in an unfitness determination where the substance dependence inhibits

7

the parent's ability to provide minimally acceptable care of the child").  Moreover, the mother has failed to honestly represent her substance use as highlighted by her trial testimony that she has never used substances other than cannabis and alcohol despite testing positive for methamphetamine five times during 2022.  Accordingly, the trial judge properly found a nexus between the mother's substance use and her parental unfitness.[3]

4.  <u>Ineffective assistance of counsel</u>.  To prevail on a claim of ineffective assistance of counsel, the mother was required to show that the "behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer" and that this conduct was prejudicial to the mother. <u>Adoption of Yvette</u>, 71 Mass. App. Ct. 327, 345 (2008), quoting <u>Care & Protection of Stephen</u>, 401 Mass. 144, 149 (1987).  See <u>Commonwealth</u> v. <u>Saferian</u>, 366 Mass. 89, 96 (1974).  "[P]rejudice is not shown if there is overwhelming evidence of unfitness." <u>Adoption of Azziza</u>, 77 Mass. App. Ct. 363, 368 (2010).  "We review the denial of a motion for new trial for an abuse of

_____

[3] The mother's argument that the trial judge erred in faulting her for not completing tasks assigned in her action plan is without merit.  The mother misunderstands that the referenced conclusion of law raised concerns over the possibility of future domestic violence given her failure generally to engage in recommended DCF services, not her failure to engage in specific domestic violence services.

discretion."  Adoption of Raissa, 93 Mass. App. Ct. 447, 455 (2018).

"Where a strategic choice is at issue, '[a]n attorney's tactical decision amounts to ineffective assistance of counsel only if it was manifestly unreasonable when made."  Adoption of Yvette, 71 Mass. App. Ct. at 345, quoting Commonwealth v. Martin, 427 Mass. 816, 822 (1998).  Trial counsel's decision not to introduce a substance use evaluation or to call for corresponding testimony was not manifestly unreasonable as the evaluation was stale by the time of trial, the evaluator did not consider extrinsic information or the mother's drug use, an update would have brought the mother's five positive methamphetamine tests and her multiple missed tests to the evaluator's attention, and the evaluator recommended that the mother abstain from alcohol.  See Commonwealth v. Teixeira, 486 Mass. 617, 637 (2001).  Similarly, trial counsel did not introduce the family action plan, because it showed the mother's failure to complete required DCF tasks, or the mental health evaluation and substance screening tests, because they highlighted the mother's five positive methamphetamine tests and multiple missed tests.  These decisions were not manifestly unreasonable.[4]

_____

[4] The mother's argument that trial counsel was ineffective given his failure to introduce the Life Safety Plan is also

9

That said, trial counsel's restrictions on communications with the mother leading up to the trial and his bare bones closing argument both seem rather below the standard of an ordinary, fallible attorney.  See Commonwealth v. Baran, 74 Mass. App. Ct. 256, 274-278 (2009).  Nonetheless, the mother has failed to show that these deficiencies prejudiced her in the context of this nontermination trial in light of the overwhelming evidence of the mother's current unfitness.  See Adoption of Azziza, 77 Mass. App. Ct. at 368.  The evidence showed that the mother repeatedly drank alcohol and then physically and emotionally abused the children.  DCF created an action plan to address these problems, but the mother repeatedly failed to complete her action plan tasks or meaningfully engage with offered services, including seeking and maintaining mental health care treatment.  See Adoption of Luc, 484 Mass. at 147, quoting Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 289 (1987) ("the mother's unwillingness to adhere to DCF's service plan, which required her to obtain treatment for her mental health challenges and substance use disorder, is 'relevant to the determination of unfitness'").  The mother consistently blamed others, including

_____

without merit because she suffered no prejudice.  The trial judge credited the mother for her decision to send the children to the maternal aunt's house, the required action under the plan.

10

her own children, during her trial testimony for her shortcomings and the family's issues, highlighting her present unwillingness to accept responsibility and make necessary changes. Accordingly, the mother was not prejudiced by her trial counsel's performance, given the overwhelming evidence of the mother's current parental unfitness and the fact that her parental rights were not terminated.

5. Continuance. "The decision on whether to continue any judicial proceeding is a matter entrusted to the sound discretion of the judge, and the judge's decision will be upheld absent an abuse of that discretion." Adoption of Gillian, 63 Mass. App. Ct. 398, 409-410 (2005). Here, the trial judge acted within his discretion in denying the mother's request for a continuance. The case had been pending for over a year, and both children objected to the continuance. Moreover, the trial judge properly highlighted how the trial offered the mother the opportunity to be fairly heard and potentially win back custody while explicitly clarifying that termination of parental rights was not at issue. Finally, the request for a continuance was based on the mother's belief that counsel was unprepared and not counsel's belief that more time was necessary. Accordingly, the

11

trial judge acted within his discretion in denying the mother's request for a continuance.[5]

<u>Judgment affirmed</u>.

<u>Order denying motion for new trial affirmed</u>.

By the Court (Neyman, Ditkoff & Wood, JJ.[6]),

*Paul Little*

Clerk

Entered:  February 13, 2025.

---

[5] The mother's argument that a continuance was appropriate given the trial judge's finding that reunification was impossible because of the mother's move to New Hampshire is unpersuasive as the Interstate Compact on the Placement of Children (ICPC) does not prevent reunification following a determination that a parent is fit.  <u>Adoption of Knox</u>, 102 Mass. App. Ct. 84, 92 ("None of this is to dispute the mother's point that had the judge found her fit, he theoretically could have returned [the child] to her without the existence of an ICPC agreement").  It is decidedly unlikely that the judge would have found the mother unfit and nonetheless returned the children to her on the facts in this case, regardless of whether an ICPC agreement had been reached.

[6] The panelists are listed in order of seniority.